Ruby CONWAY, et al.,
Plaintiffs-Appellees,

v.

CHEMICAL LEAMAN TANK LINES,
INC., Defendant-Appellant.

No. 82–2021.

United States Court of Appeals,
Fifth Circuit.

Sept. 27, 1982.

Rehearings Denied Oct. 25, 1982.

Rehearing and Rehearing En Banc
Denied Nov. 18, 1982.

Dale Dowell, Beaumont, Tex., for defendant-appellant.

Harold Peterson, Beaumont, Tex., for plaintiffs-appellees.

Before THORNBERRY, JOHNSON and GARWOOD, Circuit Judges.

JOHNSON, Circuit Judge:

This is the fourth time this diversity action has been before this Court on appeal. This case has been tried before a jury on three different occasions: in June 1974, in January 1977, and in June 1977. The issue in the instant appeal is whether the district court abused its discretion in granting a new trial because the defendant, Chemical Leaman Tank Lines, Inc. (Chemical Leaman), introduced a surprise expert witness in the second trial. We hold that the district court did not abuse its discretion.

I. *Background*

This tort action arose when two heavy tank trucks sideswiped each other near the centerline of a highway in Liberty County, Texas at approximately 4:00 a. m. on September 14, 1972. The westbound truck, owned by Dixie Transport of Texas, Inc. (Dixie Transport), lost its left front tire at impact, veered off the road to the left, and overturned, killing its driver, Robert Eugene Conway. Conway's widow, sons, and Dixie Transport brought this action against Chemical Leaman, owner of the eastbound truck involved in the collision. The essence of plaintiffs' contention is that the Chemical Leaman truck negligently crossed over the centerline of the highway, striking the oncoming Dixie Transport truck driven by Conway.

The only living eyewitness to the collision was Chemical Leaman's driver, John Johnson, who testified that Conway suddenly turned onto Johnson's side of the road when the vehicles were about a truck-length apart, both traveling about fifty miles per hour. Crucial to Johnson's credibility before the jury was the expert witness testimony concerning the various marks made by the trucks at the site of the collision. The expert witness testimony involved the tire marks in Dixie Transport's (Conway's) westbound lane, in Chemical Leaman's (Johnson's) eastbound lane, the gouge marks, and the physical dimensions of the trucks and the road.

At the first jury trial in 1974, Dixie Transport's safety director and an accident reconstruction expert testified that the tire marks were skid marks which indicated that Conway was properly in his right hand lane just before the collision, while Johnson's left wheels were over the centerline in Conway's lane. Expert witnesses for the defendant, Charles Ruble and Dr. William Tonn, testified, however, that it was Con-

way's truck which was driven on the wrong side of the roadway at the time of the collision, while Johnson's truck was in its proper lane. After hearing this testimony, the jury returned its verdict which was favorable to the plaintiffs. On appeal, this Court reversed and remanded on the grounds that the district court failed to admit certain impeachment evidence. *Conway v. Chemical Leaman, Inc., (Conway I)*, 525 F.2d 927 (5th Cir.), *modified on petition for rehearing*, 540 F.2d 837 (5th Cir. 1976).

At the second jury trial in January of 1977, the plaintiffs' witnesses again testified that tire marks indicated Chemical Leaman's truck had crossed the centerline and caused the collision. After the plaintiffs had rested their case, the defendant's counsel failed to call to the stand the two expert witnesses it had called in the previous trial, Ruble and Tonn. Instead, Chemical Leaman's safety director, Arnold Hay, was called to testify.

Hay had been designated as the representative for Chemical Leaman at the beginning of the first trial and occupied that position throughout all of that proceeding. Hay's name was not placed on the list of witnesses in the court's pre-trial order and such order specifically required notification of any further witnesses to the other party five days prior to trial. Further, and still at the first trial, Hay was not sworn in at the time of the swearing of witnesses. Hay sat at the defendant's counsel table as the representative of Chemical Leaman, assisting defendant's counsel throughout the entire trial.

When the second trial began, Hay again took his position as the representative of Chemical Leaman at the defendant's counsel table. Again, he was not listed as a witness. Again, he was not sworn to testify. No indication of any kind was given to the court or to opposing counsel that Hay would testify or be a witness at the second trial until he was called to the stand to be

sworn. The time at which Hay was called is of particular note: It was on the second day of the trial, it was after the plaintiffs had rested their case, it was after the plaintiffs' witnesses had been excused, and it was near the end of the second jury trial of the case. When Hay was called to take the stand plaintiffs' counsel immediately objected that he was a surprise witness, and the district court granted a running or continuing objection to all of his testimony.

Hay's testimony at this second trial included his opinion that the Chemical Leaman truck was not the source of the questioned eastbound tire marks.[1] Rather, Hay testified that the eastbound marks were made when a vehicle of a different type later tracked asphalt from the asphalt spill left by Conway's overturned truck. Hay also testified that what he claimed to be Chemical Leaman tire marks were not skid or brake marks; he asserted they would have been lighter than the westbound tire marks. He further testified that any eastbound tiremarks made by Chemical Leaman's truck would have been a lug (or horizontal) type marking, while the eastbound marks, he claimed for Chemical Leaman, were made by circumferential tires. Hay's analysis allowed the jury to determine that both vehicles came so close to the centerline that they clipped mirrors as the cabs of the tractors passed on the highway, causing Conway to lose control of his vehicle.

Hay's testimony failed to point out that differences in weight between Conway's asphalt-loaded truck and the Chemical Leaman truck might explain the lighter tire marks in the eastbound lane. Hay brought no pictures to show the type of tires on the right side of the Chemical Leaman truck even though other relevant pictures in evidence indicated that the truck had both circumferential and lug tires. In any event, the jury's response to the court's interrogatories in the second trial clearly imply that they were influenced by Hay's testimony.[2]

---

1. Plaintiff witnesses contended these were the *right* hand tire marks of the Chemical Leaman truck, which would place the truck itself slightly over the centerline.

2. The jury verdict in the second trial recites in pertinent part, as follows:

The jury returned a verdict favorable to the defendant.

The plaintiffs thereafter filed a motion to set aside the verdict of the jury and to grant a new trial. The motions were based on two grounds: (1) the answers of the jury to the interrogatories did not support a judgment favorable to any party; and (2) the district court erred in permitting the surprise witness, Hay, to testify for the defendant. The district court granted the motion for a new trial on the first ground only. The court did not address the plaintiffs' second ground concerning the surprise witness feature. No judgment was entered in this second jury trial.

The third jury trial was in June 1977. The jury returned a verdict favorable to the plaintiffs. Upon appeal this Court determined that the trial court erred in ordering a new trial (the third trial) because the jury's answers in the second trial supported a judgment for the defendant, Chemical Leaman. *Conway v. Chemical Leaman Tank Lines, Inc., Conway II*, 610 F.2d 360 (5th Cir. 1980). The case was reversed and remanded with instructions that the trial court enter judgment for Chemical Leaman based on the jury's answers in the second trial. The trial court complied and entered judgment for Chemical Leaman. 487 F.Supp. 647.

Plaintiffs once again filed a motion for new trial, reasserting the ground—previously urged but not ruled upon—set forth in plaintiffs' motion to set aside the verdict of the jury and to grant a new trial: that the trial court erred in allowing Hay to testify as an expert witness for defendant at the second trial. The trial court granted this motion for new trial, 87 F.R.D. 712, and entered judgment in favor of plaintiffs upon the jury verdict returned at the third trial. The trial court's power to consider the second ground of Conway's motion for new trial, and its order granting a new trial, were affirmed by this Court. In this Court's opinion, *Conway v. Chemical Leaman Tank Lines, Inc., (Conway III)*, 644 F.2d 1059, 1062 (5th Cir. 1981), it was suggested that, instead of ordering a fourth trial, judgment might be rendered for Conway on the third trial, absent any errors in that trial.

## II. *The Unfair Surprise Claim*

Rule 59(a) of the Fed.R.Civ.P. states that a "new trial may be granted to ... any of the parties ... in an action in which there has been a trial by a jury, for any of the reasons for which new trials have heretofore been granted in actions at law in courts of the United States." Fed.R. Civ.P. 59(a). It is well settled that Rule 59 provides a means of relief in cases in which a party has been unfairly made the victim of surprise. 11 Wright & Miller, *Federal Practice and Procedure* § 2805 at 38 (1973). The surprise, however, must be "inconsistent with substantial justice" in order to justify a grant of a new trial. Fed.R.Civ.P.

---

**INTERROGATORY NO. 1**

Do you find from a preponderance of the evidence that the Defendant, Chemical Leaman Tank Lines, Inc., its agents, servants or employees, committed some act or omission of negligence which was a proximate cause of the injuries and death of the deceased, Robert Eugene Conway?

Answer: "Yes" or "No".

ANSWER: Yes.

If you have answered Interrogatory No. 1 "Yes" and only in that event, list below the acts or omissions of negligence you have so found.

We have decided the defendant was too close to center line, as was the plaintiff, causing the collision of mirrors, after which uncontrollable acts by both drivers caused the final collision.

**INTERROGATORY NO. 2**

Do you find from a preponderance of the evidence that the deceased, Robert Eugene Conway, committed some act or omission of negligence which was a proximate cause of the injuries and death of the deceased?

Answer: "Yes" or "No".

ANSWER: Yes.

If you have answered Interrogatory No. 2 "Yes", and only in that event, list below the acts or omissions of negligence you have so found.

We have decided the plaintiff was also too close to the center line, causing the collision of mirrors, after which uncontrollable acts by both drivers caused the final collision.

61.[3] The district court is therefore entitled to grant a new trial only if the admission of the surprise testimony actually prejudiced the plaintiffs' case. *See* Moore, *Federal Practice* ¶ 59.08[2] at 59–111 (2d ed. 1982). This Court has limited reversible error from unfair surprise to situations where a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify. *F & S Offshore, Inc. v. K. O. Steel Castings, Inc.*, 662 F.2d 1104, 1108 (5th Cir. 1981); *Shelak v. White Motor Co.*, 581 F.2d 1155 (5th Cir. 1978).

The determination of a trial judge to either grant or deny a motion for a new trial is reviewable under an abuse of discretion standard. *Spurlin v. General Motors Corp.*, 528 F.2d 612 (5th Cir. 1976); *Massey v. Gulf Oil Corp.*, 508 F.2d 92, 94 (5th Cir. 1975); *United States v. Bucon Construction Co.*, 430 F.2d 420 (5th Cir. 1970); *Telfair v. Zim Israel Navigation Co.*, 428 F.2d 127 (5th Cir. 1970), *cert. denied*, 400 U.S. 1009, 91 S.Ct. 568, 27 L.Ed.2d 622 (1971).[4]

In the instant case, Hay was a previously unidentified witness who was called without any forewarning to testify as an expert at the second trial.[5] Hay's testimony was not cumulative; rather, it introduced the theory that the questioned eastbound tire marks were asphalt marks from another vehicle. No other party—plaintiff or defendant—had presented this theory. Under the circumstances, plaintiffs had no time or opportunity to prepare a response

to this unexpected turn of events. The interrogatories answered by the jury in the second trial leave no doubt that the jury was influenced by Hay's testimony.[6]

Even assuming the testimony was unfair and prejudicial, Chemical Leaman nevertheless contends that the plaintiffs should have moved for a continuance rather than a new trial. Indeed, the granting of a continuance is a generally more appropriate remedy than exclusion of evidence when claims of unfair surprise are raised. *See* Advisory Committee's Note to Rule 403, Fed.R.Evid. The granting or denial of a continuance, however, is a procedural matter of the kind that this Court has repeatedly said is subject to the discretion of the trial judge. *Shelak*, 581 F.2d at 1161–62. At the time that Hay's testimony was admitted, the trial was almost completed. A continuance at this point may have been, from the vantage of the district court judge, impractical and inefficient. Although this Court has acknowledged that continuance is a preferable remedy for prejudicial error from unfair surprise, there is no ironclad rule requiring it. *See F & S Offshore*, 662 F.2d at 1108. Accordingly, the district court did not abuse its discretion in granting a new trial on grounds of unfair surprise.[7]

### III.   *Award of Interest*

The only remaining question is the date on which the award of interest to the

---

**3.** Fed.R.Civ.P. Rule 61 recites as follows:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

**4.** Appellate review of an order granting a motion for a new trial, however, is somewhat broader than review of an order denying a motion for a new trial, because deference to the trial judge is subjected to the opposing tensions

of deference to the jury. *See, e.g., Love v. Sessions*, 568 F.2d 357 (5th Cir. 1978); *Massey*, 508 F.2d at 94–95.

**5.** The plaintiffs' knowledge that Hay had investigated the accident for Chemical Leaman did not provide adequate notice that he would actually be called as a witness.

**6.** At the third trial in June 1977, where the testimony of Arnold Hay was met with lengthy detailed questioning, the jury rejected his opinion.

**7.** There is no merit to Chemical Leaman's contention that the district court was required to hold a full or partial trial de novo after granting the second motion for a new trial, rather than treating the third trial as the "new trial" for purposes of Fed.R.Civ.P. 59(a).

plaintiffs should begin. On June 30, 1977, the district court entered judgment for the various plaintiffs in this cause of action. As previously noted, this Court vacated that judgment and remanded the cause in *Conway II*. At the direction of this Court, the trial court entered judgment upon the jury verdict in the second trial in favor of the defendants. On December 18, 1981, the district court reinstated that same judgment of June 30, 1977 and ordered that interest be paid on that award from its date, June 30, 1977. Chemical Leaman contends that the district court erred in ordering interest to run from the date of the 1977 judgment rather than the date of the 1981 judgment.

Texas Revised Statute Art. 5069–1.05 (West Supp. 1982) provides for the award of interest upon judgments as follows:

> All judgments of the courts of this State shall bear interest at the rate of nine percent per annum from and after the date of judgment, except where the contract upon which the judgment is founded bears a specified interest greater than nine percent per annum, in which case the judgment shall bear the same rate of interest specified in such contract, but shall not exceed ten percent per annum, from and after the date of such judgment.

A number of Texas courts have held that interest upon a judgment is to be computed from the time the trial court erroneously enters a judgment. *Phillips Petroleum v. Riverview Gas Compression Co.*, 409 F.Supp. 486, 496 (N.D.Tex.1976); *Thornal v. Cargill, Inc.*, 587 S.W.2d 384, 384–85 (Tex. 1979). All of these cases, however, involve the rendition of an erroneous judgment in favor of the defendant which was subsequently reversed on appeal. In the case at bar the erroneous judgment was rendered in favor of the plaintiffs and it was this Court which reversed that judgment and directed that judgment be entered in favor of the defendant—not the plaintiff.

The question before this Court, therefore, comes from a situation where the parties are positioned in the opposite posture from the cases which might provide precedential authority, and no Texas court appears to have addressed it. The general rule appears to be

> [I]f the action of the appellate court in reversing the opinion of the lower court has the effect of wiping out the original judgment, then interest should run only from the time when the amount of the new award is fixed.

47 C.J.S. "Interest" § 59 at 68 (1946). In the absence of authority to the contrary, and being directed to none by counsel, it will be assumed that Texas will follow the general rule. Accordingly, the district court's award of postjudgment interest is reversed and this cause is remanded for entry of an award of postjudgment interest from December 18, 1981.

The judgment of the district court is affirmed in part, reversed in part, and remanded.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.