762 F.2d 1008
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BARNEY JOHNSON, ET AL., PLAINTIFFS,
EVA JOHNSON, PLAINTIFF-APPELLANT,
v.
UNITED STATES OF AMERICA, DEFENDANT-APPELLEE.
 NO. 84-5295, 84-5305
 United States Court of Appeals, Sixth Circuit.
 4/30/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 Before: MERRITT, KENNEDY and WELLFORD, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 In this medical malpractice case, plaintiff appeals the District Court's judgment that he failed to carry his burden in establishing medical malpractice under the Federal Tort Claims Act. We affirmed the District Court's judgment.
 
 I.
 
 2
 On August 21, 1975, plaintiff, Barney Johnson, a former coal miner, was hospitalized at defendant's Veterans Administration Hospital after a routine x-ray revealed a round density in his lungs. Since plaintiff had history of lung problems, he was admitted to the hospital for a more complete evaluation. At the time of his admission to the hospital, plaintiff was not in good physical condition; he was malnourished; complained of bowel irregularity and had recently lost six pounds. These symptoms alerted the defendant because they are indications of colon cancer in an individual plaintiff's age. (JA at 253)
 
 
 3
 On August 27, 1970, plaintiff was given a barium enema to check for cancer of the colon. The results of this enema were inconclusive due to fecal material remaining in the colon. In order to evacuate the barium and fecal material in the colon, plaintiff was put on a liquid diet and given laxatives and enemas.
 
 
 4
 On August 29, 1979, a proctosigmoidoscopy was performed on plaintiff revealing cancer of the colon. A second barium enema was needed to reveal the size, location and configuration of the tumor and other tumors near it. As a result, the Tumor Board, a group of physicians that decide whether a particular medical procedure is appropriate, authorized a second barium enema to see if there were any additional malignant tumors higher up the colon. On September 5, 1979, a scout film of plaintiff's colon revealed that the barium from the first enema had been evacuated from his system. Dr. Harold Ross, chief radiologist, administered the second barium enema, but aborted the procedure upon observing an apple core lesion. A small amount of barium flowed above the lesion.
 
 
 5
 Plaintiff was then transferred to a surgical ward under the care of Dr. Michael Stein. Dr. Stein prescribed an elemental liquid diet in an attempt to improve plaintiff's physical condition so that plaintiff would be strong enough for surgery. Additionally, the record suggests that the elemental liquid diet would help in evacuating the barium naturally. Strong laxatives and enemas were discontinued for fear of perforating the thin wall of the colon. Dr. Stein testified that he ordered Fleet enemas to help plaintiff eliminate the barium from below the lesion.
 
 
 6
 On September 6, 1979, an x-ray revealed that though there was a consistent evacuation of barium from the plaintiff's colon, a substantial amount remained. No x-rays were taken from September 7 through September 12, 1979. On September 13, 1979, x-rays indicated a decrease in the amount of barium with only a few small boluses of barium and fecal material above the lesion. At this time there were no objective indications based on x-rays or plaintiff's vital signs that perforation of the colon was imminent or the need for immediate surgical intervention.
 
 
 7
 At 12:40 AM on September 15, 1979, plaintiff complained of pains in his abdomen; also, plaintiff's temperature had risen. The nurse on duty notified Dr. Stein and he ordered the nurse to discontinue the tube feeding. By 2:20 AM plaintiff's temperature had fallen and his vital signs stabilized. Plaintiff's abdominal pain decreased, but he started complaining of chest pains. At 2:50 AM, Dr. Stein decided to transfer plaintiff to the Intensive Care Unit for an EKG and further monitoring. Plaintiff's vital signs stabilized, but he still complained of chest pain. Plaintiff was given a small amount of morphine and he slept the rest of the night. At 7:15 AM plaintiff woke complaining of chest pains. Plaintiff's temperature and heart rate increased. Dr. Stein examined plaintiff at 8:00 AM and ordered x-rays. The x-rays revealed a perforated colon. Dr. Stein performed 3-1/2 hours of surgery, removing the cancerous section of the colon, cleansing the spillage in the abdominal cavity caused by the perforation and performing a colostomy. The perforation had been caused by a bolus of hard solidified barium and feces.
 
 II.
 
 8
 In a medical malpractice case under the Federal Tort Claims Act, plaintiff must prove that defendant failed to act with ordinary and reasonable care in accordance with the recognized standard of acceptable professional practice in the community and that defendant's failure was the proximate cause of plaintiff's injury. T.C.A. Sec. 29-26-115.
 
 
 9
 Physicians are liable only for negligence; a medical practitioner is not negligent merely because he is unsuccessful in his attempt to cure the patient. Liability depends upon whether he acted with the degree of skill, learning and experience ordinarily exhibited by others in his profession.
 
 
 10
 The standard of review in this case is whether the District Court's findings of fact were clearly erroneous. Fed. R. Civ. Proc. 52(a); Haslar v. United States, 718 F.2d 202, 204 (6th Cir. 1983). In order for a finding to be clearly erroneous, the reviewing court after considering the entire record, must be left with the conviction that the District Court's judgment was mistaken. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). The question before this Court is whether the District Court was clearly erroneous in holding that plaintiff had not met its burden in establishing malpractice.
 
 
 11
 There are two issues on appeal. The first issue is whether plaintiff was negligent in treating plaintiff for colon cancer. This issue involves the level of care defendant used in (1) facilitating and monitoring the evacuation of the barium and (2) in operating early enough on September 15, 1979, once learning that plaintiff was in pain. Germane to these issues is whether the pathologist's report showed the size and location of the barium above the lesion on September 13, 1979. The second issue is whether the District Court abused its discretion in not granting relief under Fed. R. Civ. Proc. 26(e) in light of Dr. Stein's changed testimony regarding the size of the bolus.
 
 
 12
 The record permits the finding that defendant was not negligent in its attempt to evacuate the barium administered on September 5, 1979, from plaintiff's colon. It is undisputed that under ordinary circumstances barium should be removed from the colon as soon as possible to avoid forming a bolus of barium and fecal material which might perforate the colon. It is also undisputed that in administering a barium enema there is some risk of perforating the colon. Barium can be removed from the colon naturally or with strong laxatives and high enemas. Under certain circumstances, Fleet enemas can be used to evacuate the barium. In plaintiff's case, Drs. Dralle and Stein, upon detecting the lesion, discontinued stress laxatives and high enemas for fear of perforating the colon. Dr. Stein testified that he placed plaintiff on elemental diet and Fleet enemas in order to facilitate the evacuation of the barium safely. The x-rays, plaintiff's vital signs and nutritional means were used to monitor and evacuate the barium. The District Court held that plaintiff failed to show that these methods were insufficient to meet the recognized standard of acceptable professional care in the community. We cannot say that the District Court's findings of fact were clearly erroneous in this matter.
 
 
 13
 A disputed question is whether the pathologist's report showed what the size extent and location of the barium above the lesion on September 13, 1979. Plaintiff insists that there was a 5.5 X 4.0 X 3.5 cm bolus of barium present on September 13, 1979, because the pathologist's report states that such a bolus existed on September 15, 1979. This does not necessarily follow. The condition of the bolus on September 15, 1979, cannot prove the condition of the bolus two days earlier. Further, even if it could, knowledge derived from a pathologist's report after the colon was perforated cannot be used before hand for diagnostic purposes. All other objective indicators of perforation, including the commonly used KUB x-rays, did not establish the existence of a perforation prior to the time that plaintiff complained of pain and his vital signs changed. The record fails to show that the District Court's findings of fact were clearly erroneous in this matter.
 
 
 14
 Additionally, throughout this period, Dr. Stein was attempting to strengthen plaintiff so that plaintiff could endure an operation. At the same time, Dr. Stein was concerned about the possibility that a bolus of barium might perforate plaintiff's colon. Dr. Stein was trying to balance these concerns. This is evident on September 15, when Dr. Stein was informed that plaintiff complained of abdominal pains. For the next eight hours, plaintiff was monitored, given medication, transferred to ICU, given an EKG, and x-rayed. Finally, when it was clear that surgical intervention was required, Dr. Stein performed three and one-half hours of surgery removing the tumor and repairing the colon. Dr. Stein did not operate sooner because he was concerned with plaintiff's capacity to endure surgery. The District Court held that plaintiff failed to establish that defendant acted negligently in this regard. Based on the record, the District Court's findings of fact are not clearly erroneous.
 
 
 15
 On appeal, plaintiff makes much of the fact that Dr. Stein's trial testimony differed from his deposition testimony and operative note concerning the size of the bolus of barium and fecal material. In his operative note Dr. Stein describes the bolus as three inches long. (JA at 208) Later, Dr. Stein said that this notation must have been a typographical error, since he believed that there were three one-centimeter boluses of barium and fecal material. Plaintiff contends that the pathologist's report confirms the description of the size of the bolus in Dr. Stein's operative note. (JA at 211) Even if true, it is difficult to see how this shows that a three-inch bolus existed on September 13, 1979, or more importantly, that defendant should have known of its existence.
 
 
 16
 Plaintiff contends that the surprise testimony concerning the size of the bolus was crucial to his cross-examination and overall trial strategy. Rule 26(e) provides for relief for such surprise only when it is inconsistent with substantial justice. Conway v. Chemical Leaman Tank Lines, Inc., 687 F.2d 108, 111 (5th Cir. 1982). Further, the District Court may grant a new trial only if the surprise prejudices plaintiff's case. Id. at 112. Plaintiff has not demonstrated how the surprise testimony prejudiced his case. Moreover, when confronted with the surprise testimony plaintiff could have asked for a continuance in order to assimilate the surprise testimony and plan new strategy. Instead, plaintiff proceeded to cross examine defendant's expert witness concerning the typographical error. It is too late after the judgment to seek a remedy for surprise testimony in these circumstances. Moyland v. Siciland, 292 F.2d 704, 705 (9th Cir. 1961). Plaintiff contends that he did not ask for a continuance because he believed that the surprise testimony fatally damaged his case. But this is just the time to seek a continuance. We conclude, therefore, that the District Court did not abuse its discretion in denying plaintiff's request for a new trial.
 
 
 17
 The District Court imposed sanctions upon Mrs. Johnson, plaintiff's spouse, for not complying with a court order to produce certain documents. The sanctions consisted of dismissing with prejudice her companion case based on the same set of facts and denying her the opportunity to testify in her husband's case. Since we affirm the District Court's judgment in Mr. Johnson's case, we do not need to address the propriety of the sanctions imposed on Mrs. Johnson.
 
 
 18
 Accordingly, the District Court's judgment is affirmed.