May 25, 1993
[SYSTEM'S NOTE: Opinion dated 3/12/93 was vacated and this is
the reissued opinion.]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1836

AGUSTINA PEREZ-PEREZ,

Plaintiff, Appellee,

v.

POPULAR LEASING RENTAL, INC., ET AL.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose Antonio Fuste, U.S. District Judge]

Before

Torruella and Stahl, Circuit Judges,

and Skinner,* Senior District Judge.

Harry A. Ezratty for appellants.

Arnoldo E. Granados with whom Ortiz Toro & Ortiz Brunet was on

brief for appellee.

May 25, 1993

* Of the District of Massachusetts, sitting by designation.

SKINNER, Senior District Judge.

Plaintiff-appellee Agustina Perez-Perez ("Perez-

Perez") brought this action seeking damages for emotional

distress sustained as a result of the death of her forty-

nine year-old sister, Maria Perez-Perez ("Maria"). Perez-

Perez alleged that while defendant-appellant Oscar

Betancourt Mateo ("Betancourt") was driving a car leased

from defendant-appellant Popular Leasing Rental, Inc.

("Popular"), Betancourt negligently struck and killed Maria

on November 27, 1990, as she was walking along the side of

Route 849 in Puerto Rico. A jury returned a verdict in

Perez-Perez's favor in the amount of $275,000. Betancourt

and Popular appeal from the judgment entered on the verdict

by the United States district court of Puerto Rico, Judge

Fuste, and from an order denying defendants' "Motion For

Alternative Relief." Defendants claim that relief from

judgment is necessary because (1) the trial testimony was

poisoned by perjury, (2) plaintiff's counsel unfairly

surprised the defendants by introducing previously

undisclosed expert medical testimony concerning Betancourt's

eyesight, and (3) the verdict was excessive. Before

considering these issues, however, we first address

plaintiff's contention that this court lacks appellate

-2-
2

jurisdiction because the notice of appeal and the "Motion

for Alternative Relief" were untimely filed. We find that

we have appellate jurisdiction to consider defendants'

direct appeal from the district court judgment, as well as

jurisdiction to consider the district court's denial of

defendants' post trial motion. Because we find that the

district court incorrectly admitted the testimony of the

plaintiff's medical expert, we reverse and remand for a new

trial.

I. Appellate Jurisdiction

Fed. R. App. P. 4(a) requires any party appealing from

a judgment of the district court to file a notice of appeal

within 30 days of the entry of the judgment. Timely filing

of a notice of appeal is "mandatory and jurisdictional."

Browder v. Director, Dept. of Corrections, 434 U.S. 257, 264

(1978). In this case, there is no dispute that the

defendants timely filed a notice of appeal from the district

court's order denying the motion for alternative relief. In

contrast, the parties dispute whether timely appeal was

taken from the district court's judgment entered against

defendants on April 22, 1992. A notice of appeal was not

filed until June 26, 1992, more than two months later.

-3-
3

If a motion to alter or amend judgment pursuant to Fed.

R. Civ. P. 59 is timely filed with the district court, the

time for appeal runs from the entry of the order denying

such motion. Fed. R. App. P. 4(a)(4). Defendants invoke

the tolling provisions of this rule by describing their

"Motion for Alternative Relief" as one timely brought under

Rule 59(e). The motion was filed with the district court on

April 30, 1992, but not served on Perez-Perez until May 4,

1992. The timeliness of a Rule 59 motion to amend judgment

is determined by the date it is served, not by the date it

is filed. Rivera v. M/T Fossarina, 840 F.2d 152, 154 (1st

Cir. 1988). Though it might appear that the motion was not

filed within the requisite 10-day period, Fed. R. Civ. P.

6(a) provides that the intermediate Saturdays and Sundays be

excluded from the 10-day count. Accordingly, we find that

the motion was served on the plaintiff within ten days of

the entry of judgment. This, however, does not end our

inquiry.

Our jurisdiction over the appeal from judgment (as

opposed to the appeal from the denial of the motion itself)

depends on whether we characterize the "Motion For

Alternative Relief" as one brought under Rule 59(e) or Fed.

R. Civ. P. 60(b). A motion for relief from judgment under

-4-
4

Rule 60(b), unlike a motion to amend a judgment under Rule

59(e), does not toll the 30-day appeal period. Browder, 434

U.S. at 263 n.7; Lopez v. Corporacion Azucarera de Puerto

Rico, 938 F.2d 1510, 1513 (1st Cir. 1991). Our inquiry into

the character of the motion is a functional one:

"nomenclature should not be exalted over substance."

Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 26 (1st

Cir. 1988) (quoting Lyell Theatre Corp. v. Loews Corp., 682

F.2d 37, 41 (2nd Cir. 1982)); 7 Moore's Federal Practice

60.30[1] (1992). The caption "Motion for Alternative

Relief," does not describe a motion under either Rule 59 or

Rule 60. One of the claims for relief, remittitur of an

excessive verdict, is a classic Rule 59 claim. The other

claims, surprise and misconduct, are specifically referred

to in Rule 60(b), and the defendants appear to rely on Rule

60(b)(1) in their memorandum to the district court.1

1 The district court entered the following order denying the
defendants' motion on June 12, 1992:

This final order will start the counting of
the term for appeal by defendants.

The court now denies [defendants'] April 30
motion for relief against the verdict (JNOV) [sic]
and for new trial or remittitur.

IT IS SO ORDERED.

-5-
5

Rule 59 provides that a new trial may be granted in a

jury action for any reason for which new trials were granted

at common law. The rule creates the opportunity to correct

a broad panoply of errors, in order to prevent injustice.

11 Wright & Miller, Federal Practice and Procedure: Civil

2803, 2805 (1973). In an early case under Rule 59, the

Supreme Court described the breadth of the rule:

The motion for a new trial may invoke the
discretion of the court in so far as it is
bottomed on the claim that the verdict is against
the weight of the evidence, that the damages are
excessive, or, that, for other reasons, the trial

was not fair to the party moving; and may raise

questions of law arising out of substantial errors
in admission or rejection of evidence or
instructions to the jury.

Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)

(emphasis supplied). It would appear in general that the

grounds for relief from judgment under Rule 60(b) may also

be grounds for a new trial under Rule 59, if the motion is

timely made. 11 Wright & Miller, supra, 2805-2810. In

Conway v. Chemical Leaman Tank Lines, Inc., 687 F.2d 108,

112 (5th Cir. 1982), the court held that the grant of a new

trial under Rule 59 was warranted when a party called a

If the defendants' motion did not in fact qualify as a
motion under Rule 59, the district court had no power to
extend the time for filing an appeal, which is
jurisdictional. Browder, 434 U.S. at 264.

-6-
6

previously unidentified expert witness to testify without

any forewarning, resulting in a favorable verdict for that

party. This is precisely one of the instances of misconduct

of which the defendants complain in their motion in this

case.

The interrelation of Rules 59 and 60 was described by

the court in Van Skiver v. United States, 952 F.2d 1241

(10th Cir. 1991), cert. denied, 113 S. Ct. 89 (1992), as

follows:

[T]he rules allow a litigant subject to an adverse
judgment to file either a motion to alter or amend
the judgment under Fed.R.Civ.P. 59(e) or a motion
seeking relief from judgment pursuant to
Fed.R.Civ.P. 60(b). These two rules are distinct;
they serve different purposes and produce
different consequences. Which rule applies to a
motion depends essentially on the time a motion is
served. If a motion is served within ten days of
the rendition of judgment, the motion will
ordinarily fall under Rule 59(e). If the motion
is served after that time it falls under Rule
60(b).

Van Skiver, 952 F.2d at 1243 (citations omitted). In other

words, the litigant who gets his motion in on time enjoys

the full menu of grounds for relief provided by Rule 59; if

not, he is confined to the six specific grounds of relief

found in Rule 60(b).

It is not quite that simple, however, because of

additional restraints which the courts have imposed on

-7-
7

motions brought under each rule. Motions under Rule 59 must

raise matters that were brought to the attention of the

district judge during the trial, unless the alleged error

was fundamental. 11 Wright & Miller, supra, 2805; Harley-

Davidson Motor Co. v. Bank of New England-Old Colony, N.A.,

897 F.2d 611, 616 (1st Cir. 1990). Conversely, motions

under Rule 60(b) must raise issues which were not available

to the moving party within the appeal period, barring

exceptional circumstances. Silk v. Sandoval, 435 F.2d 1266

(1st Cir.), cert. denied, 402 U.S. 1012 (1971); Mitchell v.

Hobbs, 951 F.2d 417 (1st Cir. 1991). The relatively open

ended time limits of Rule 60(b) can not be used to

circumvent the time limitations on appeal.

A further question is raised by our opinion in

Echevarria-Gonzalez v. Gonzalez-Chapel, in which we held

that a motion which invoked Rule 60(b) and relied on the

rhetoric of Rule 60(b) to support it, would not be construed

as a motion under Rule 59 for purposes of tolling the appeal

period, even though filed within ten days of the judgment,

as required by Rule 59. Echevarria, 849 F.2d at 26. The

critical fact in Echevarria, however, was that the motion

sought relief from a default judgment. Under Fed. R. Civ.

P. 55, the only means of setting aside a default judgment is

-8-
8

by motion under Rule 60(b); the motion was either a Rule

60(b) or nothing.

A more general rule is exemplified by our opinion in

Lopez v. Corporacion, in which we held that a timely filed

motion could be treated as filed under Rule 59 even though

it was titled "Motion for Relief From Judgment" and

ostensibly filed pursuant to Rule 60(b). Lopez, 938 F.2d at

1513. We quoted with approval the statement in a leading

text:

[A] motion, though characterized as one under Rule
60(b), which is filed within ten days of the entry
of judgment and questions the correctness of the
judgment, will be considered a functional Rule 59
motion and will postpone the time to appeal until
entry of the order disposing of it.

Id. at 1513-14 (quoting 9 Moore's Federal Practice

204.12[1]). We distinguished Echevarria on the ground that

the movant in Echevarria sought relief from a default

judgment and relied on cases construing Rule 60(b), and

neither was true of the motion in Lopez. Id. at 1514.

In our present case, the defendants have not

characterized their motion one way or the other. In the

supporting memorandum filed in the district court, the only

rule reference is to Rule 60(b), but is a casual, rather

-9-
9

than an exclusive, one.2 They have, however, relied

heavily on a case decided under Rule 60(b), Anderson v.

Cryovac, Inc., 862 F.2d 910, 924 (1st Cir. 1988). But as we

hold infra, the propositions for which that case is cited is

equally applicable to a timely filed motion under Rule 59.

We find the state of the record in this case to be

closer to Lopez than to Echevarria, which we view as

specifically exemplary of the special rule affecting default

judgments. Accordingly, we rule that the defendants'

motion, having been filed within the ten-day period as

computed under Rule 6(a), may be construed as a motion under

Rule 59, the filing of which postpones the time for filing

an appeal until 30 days after the motion's determination.

The subsequent timely filing of the appeal established our

appellate jurisdiction.

II. Grounds for the Motion

Defendants' motion argued two grounds for setting aside

the jury verdict. First, defendants alleged the trial was a

2 "Defendants contend - among other things - that a certain
happening at trial constituted conduct violative of Rule
60(b)(3) of the Federal Rules of Civil Procedure, thus
paving the way for relief from judgment. In the same vein
the conduct complained of, in addition to other conduct, ran
afoul of section (b)(1) of the same Rule."

-10-
10

fraud on the court, claiming that a witness offered perjured

testimony with the assistance of opposing counsel. Second,

defendants argued they were unfairly surprised at trial

because the court allowed the plaintiff to offer the

testimony of a previously undisclosed medical expert.

Ordering the presentation of witnesses and the granting of a

new trial are both matters committed to the discretion of

the trial court, and may be reversed only for abuse of

discretion. See Fed. R. Evid. 611; CVD, Inc. v. Raytheon

Co., 769 F.2d 842, 848 (1st Cir. 1985), cert. denied, 475

U.S. 1016 (1986).

A. Fraud on the Court

Defendants must clear a high hurdle in order to set

aside the verdict based on their allegations of fraud. The

moving party must demonstrate fraud by clear and convincing

evidence and must show that the fraud foreclosed full and

fair preparation or presentation of its case. We have

explained that fraud on the court occurs,

where it can be demonstrated, clearly and
convincingly, that a party has sentiently set in
motion some unconscionable scheme calculated to
interfere with the judicial system's ability
impartially to adjudicate a matter by improperly
influencing the trier or unfairly hampering the
presentation of the opposing party's claim or
defense.

-11-
11

Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.

1989).

When considered against these standards, it is clear to

us that the district court properly denied so much of

defendants' motion as was based on speculative and

unsubstantiated allegations of perjury. Defendants'

argument centers on the trial testimony given by Luis Rafael

Villanueva Gaetan ("Rafi"), the only eye witness to the

accident. During trial, Rafi testified that as he was

walking down Route 849 he passed Maria, who was standing on

the shoulder of the road. A short time later he heard a

"blow" and turned to see Maria's body falling to the ground.

Rafi explained that Betancourt's car was passing just in

front of Maria's location at the time her body was falling

to the pavement. After the car stopped a short distance

down the road, Rafi said that he ran to the car and

informed the driver, who was then inspecting the front of

his car, that he had struck a pedestrian. According to

Rafi, the driver looked in the direction of Maria's body,

then returned to his car and drove off. Rafi identified

Betancourt as the driver of the car.

On cross-examination, Rafi admitted that some of the

detail of his trial testimony was absent from two prior

-12-
12

sworn statements given by him. Defense counsel highlighted

two significant additions to Rafi's initial sworn

statements. First, while Rafi testified at trial that he

saw Maria's body falling to the pavement, his prior

statements implied that her body was already on the pavement

by the time he turned towards the sound of the blow.

Second, his trial testimony placed Betancourt's car just in

front of Maria at the time of the blow, while his initial

statements do not mention the precise location of the car,

other than the fact that it came to a stop down the road.

Taking these inconsistencies and adding to them Rafi's

admission that he had visited opposing counsel's office to

prepare his trial testimony, defendants charge that opposing

counsel and Rafi conspired to present perjured testimony.

The judge properly concluded that defendants failed to

present clear and convincing evidence that Rafi committed

perjury or that opposing counsel encouraged, secured, or

knowingly assisted the allegedly perjured testimony. We

note that one purpose of cross-examination is to give

counsel the opportunity to root out the type of

inconsistencies, omissions, and exaggerations alleged here.

On cross-examination, defendants raised before the jury the

same facts that are now alleged on appeal to constitute

-13-
13

fraud on the court. The significance of the inconsistencies

in Rafi's testimony, as well as his credibility and

sincerity, was for the jury to decide and we see no reason

to disturb its findings or the district court's order

denying relief from the verdict on this ground.

B. Undisclosed expert testimony

Defendants also seek a new trial because the district

court abused its discretion when it permitted the plaintiff

to introduce the testimony of a previously undisclosed

medical expert, Dr. Walter Kleis, who testified that

Betancourt's eyesight was severely impaired by glaucoma.

Dr. Kleis testified that Betancourt's visual impairment was

so severe that it could cause him to miss a pedestrian

walking along the road under conditions similar to those on

the evening of the accident.

Up to the time of Dr. Kleis' testimony, plaintiff had

pursued the case under the theory that Betancourt was

driving with "utter disrespect toward human life" and that

"the accident was due only and exclusively to the negligence

of defendants [sic] for not driving safely." Plaintiff

reaffirmed this as the exclusive theory of the case in the

initial pretrial order and two amended pretrial orders. At

-14-
14

no time did plaintiff suggest that Betancourt's eyesight

would be raised as an issue at trial, nor did plaintiff

identify any medical experts who were to be called at trial.

Plaintiff, nonetheless, argued to the district court that

Dr. Kleis' testimony should be permitted as "rebuttal"

evidence to address an issue raised by Betancourt's direct

examination. Betancourt's entire direct testimony on the

issue follows:

Q Now, I note that you wear glasses.

A Yes.

Q Would you tell us, please, what the purpose of
those glasses are [sic].

A The purpose of the glasses is to improve my vision
to make it better. But I can drive without
glasses. I can see without glasses if I want to.

Plaintiff's counsel made Betancourt's eyesight a

central issue on cross-examination (more than a third of the

record testimony is devoted to cross-examination on this

issue). Counsel's examination explored the physical

condition of Betancourt's eyes, namely the presence of

glaucoma; his on-going medical treatment for this condition,

including daily use of eye drops and recent laser treatment

of one eye; and the effect of this condition and these

treatments on his peripheral vision, his ability to

-15-
15

distinguish objects at a distance, and his ability to see in

the dark.

During Betancourt's cross-examination, plaintiff asked

the court for permission to present Dr. Kleis as a rebuttal

witness. Counsel stated that Dr. Kleis would testify that

based on his review of Betancourt's medical records,

Betancourt suffered from "all kinds of problems in terms of

centralized and focusing vision," particularly after sunset,

and that he should not have been driving a car at night.

The court initially denied plaintiff's request, reasoning

that the pretrial order made no mention of a medical expert

and that the proffered testimony raised an entirely new and

inconsistent theory of the case. The judge later decided to

hear the testimony of Dr. Kleis outside the presence of the

jury. At that time, the court learned that plaintiff's

counsel had first contacted Dr. Kleis around the beginning

of January 1992 at which time counsel told Dr. Kleis that it

was likely that he would testify at trial. Plaintiff made

no similar representation to the court or to defense counsel

at any time prior to trial in April 1992, despite twice

seeking to amend the pretrial order to reflect changes in

witnesses and other evidence. The court addressed

plaintiff's counsel, concluding that he would permit Dr.

-16-
16

Kleis to testify before the jury "as an act of justice to

your client, not to you. You did wrong."

Dr. Kleis testified for the jury that Betancourt

suffered from glaucoma, a medical condition of the eyes that

reduces an individual's peripheral vision, especially at

night. He stated that the eye drops used to treat

Betancourt's glaucoma made his pupils very small, which

further reduced his visual capacity. In addition, he

testified that Betancourt suffered from myopia, a condition

that impaired his ability to see objects at a distance. Dr.

Kleis explained that taken together, these conditions would

make it difficult for Betancourt to see and perceive objects

at the periphery of his vision. Responding to a

hypothetical question, Dr. Kleis concluded that under the

lighting and driving conditions on the night of the accident

there was a possibility that Betancourt did not see the

victim on the side of the road. Finally, Dr. Kleis

testified that Betancourt had undergone laser surgery on his

left eye shortly after the accident.

In this case, the trial court's own findings compel the

conclusion that the defendant was unfairly surprised and

that plaintiff's counsel engaged in misconduct. Though we

believe that the judge abused his discretion with regard to

-17-
17

his ultimate decision to admit Dr. Kleis' testimony, his

initial reaction was correct and we defer to the judge's

well-considered findings of fact. The judge made several

germane findings on the record. The judge concluded that

(1) Dr. Kleis' testimony was not proper rebuttal evidence of

an issue put into dispute on direct examination;3 (2)

plaintiff's counsel "knew for a long time" that Betancourt

suffered from glaucoma and that "at least since January []

had Dr. Kleis available to testify;" (3) there was "no

excuse as to why [counsel] kept [Dr. Kleis' testimony] under

[his] sleeve until this moment;" and (4) the proffered

testimony changed the theory of the case from a charge that

Betancourt drove recklessly to an allegation that Betancourt

was "driving like normal people do, and that because of an

eyesight problem he had the accident." In spite of these

findings, the judge ultimately decided to admit Dr. Kleis'

testimony as an "act of justice" to the plaintiff, noting

3 Plaintiff contends that Dr. Kleis' testimony was
admissible under the terms of the pretrial order which
expressly reserved to the parties a right to call
undisclosed rebuttal witness. The judge determined that Dr.
Kleis was not a proper rebuttal witness. This determination

is within the sound discretion of the trial judge, Lubanski

v. Coleco Indus., Inc., 929 F.2d 42, 47 (1st Cir. 1991), and

we are in full agreement with it.

-18-
18

that the situation was totally beyond plaintiff's control.4

In this case, Dr. Kleis' testimony and counsel's

extensive cross-examination of Betancourt on his visual

impairment, introduced a novel theory of liability to this

case. Defense counsel was denied the opportunity to design

an intelligent litigation strategy to address the charge of

visual impairment and to effectively cross-examine Dr. Kleis

in a highly specialized field of medicine. Without time to

review Dr. Kleis' records or to gain sufficient medical

knowledge and without a chance to investigate Betancourt's

physical condition, speak to his primary care physician, or

arrange for a rebuttal expert, defense counsel was precluded

from effectively addressing the charge.

We have no doubt that this state of the record exactly

comports with the definition of unfair surprise succinctly

set out by the Court of Appeals of the Fifth Circuit:

It is well settled that Rule 59 provides a means
of relief in cases in which a party has been
unfairly made the victim of surprise. The
surprise, however, must be "inconsistent with

4 We are aware of the difficulty of excluding highly
relevant and perhaps dispositive testimony which apparent
substantive justice requires should be considered by the
jury. Apparent substantive justice may be illusory,
however, if the purportedly dispositive evidence is not
subject to fair testing in an even handed process.

-19-
19

substantial justice" in order to justify a grant
of a new trial. The district court is therefore
entitled to grant a new trial only if the
admission of the surprise testimony actually
prejudiced the [moving party's] case. This Court
has limited reversible error from unfair surprise
to situations where a completely new issue is
suddenly raised or a previously unidentified
expert witness is suddenly called to testify.

Conway v. Chemical Leaman Tank Lines, Inc., 687 F.2d at 111-

12 (footnote and citations omitted). Furthermore, the

district judge made a specific finding that plaintiff's

counsel had been guilty of misconduct. On the facts of this

case, the criteria for misconduct which we imposed under

Rule 60(b) in Anderson v. Cryovac, 862 F.2d at 923-26, apply

equally to this motion under Rule 59. Reversal of the

judgment and a remand for a new trial is warranted under

either analysis.

We need not address defendants' claim that the jury

award was excessive, since in any case there must be a new

trial. The judgment is reversed and the case remanded to

the district court for a new trial.

Costs awarded to appellants.

-20-
20