UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-60854
Summary Calendar
_____


ROGER A. HEDRICK,

Plaintiff-Appellee-
Cross-Appellant,

versus

WAL-MART STORES, INC.,

Defendant-Appellant
Cross-Appellee.


_____

Appeal from the United States District Court for the
Southern District of Mississippi
(5:93-CV-22-BrB)
_____


(September 25, 1995)


Before GARWOOD, WIENER and PARKER, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Defendant-appellant Wal-Mart Stores, Inc. (Wal-Mart) appeals
the judgment entered against it, following a jury trial, in the
amount of $62,500.  This case arose out of a slip and fall incident
which occurred in the automotive department of the Wal-Mart store
in Vicksburg, Mississippi.  The jury verdict of $125,000 in favor

_____

[*]   Local Rule 47.5 provides: "The publication of opinions that
have no precedential value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that Rule, the Court has determined that this opinion
should not be published.

of plaintiff-appellee Roger A. Hedrick (Hedrick) was reduced by fifty percent to reflect the jury's determination that Hedrick was fifty percent contributorily negligent.  We affirm.

## Facts and Proceedings Below

Hedrick was an invitee in Wal-Mart's Vicksburg, Mississippi store on the morning of February 13, 1990 when he slipped and fell in the automotive department at approximately 10:00 a.m.  Hedrick claimed that his fall resulted from the presence of some type of petroleum product on the floor.  Hedrick fell on his second trip down the aisle where the incident occurred.  He had stopped on this second trip in order to pick up a five-gallon drum of hydraulic oil.  Hedrick fell while attempting to place this drum of oil into his shopping cart.  He admitted at trial that he had not seen the oil product hazard which caused his fall.

As a result of this fall, Hedrick asserted that he suffered permanent injury to his lower back.  He consulted several doctors during the four years following his accident.  Hedrick was eventually referred to Dr. Salil Tiwari (Tiwari), a neurologist.  The district court permitted the jury to view portions of a videotaped deposition of Tiwari in which the doctor testified that it was unlikely that Hedrick's pain would lessen, or that Hedrick would get any better.  Tiwari also testified that Hedrick would incur additional medical costs.  Hedrick presented other witnesses who testified that his condition had deteriorated since the accident, during which time he has had minimal employment.

Hedrick elicited the testimony of two former Wal-Mart

employees to establish the existence of the hazard--oil on the floor--and Wal-Mart's awareness of it. Dewayne Washington, a Wal-Mart stock clerk and sales clerk at the time of the accident, testified that he had discovered oil on the floor of the aisle adjacent to the aisle where Hedrick fell when he arrived at work around 7:00 a.m. on the morning of the accident. Washington testified that he had cleaned up this oil, but that there was a space between the floor and the bottom of the counter which separated the two aisles; he further testified that he did not, prior to Hedrick's accident, check the other side of the counter to see if oil had seeped into the aisle where Hedrick fell. In an earlier deposition, Washington testified that he had seen no oil in the aisle where the accident occurred, nor had he been in that aisle prior to the accident. He said nothing in his deposition about finding oil spilled on the floor of the adjacent aisle.

Hedrick also relied on the testimony of former Wal-Mart employee Steve Wiley. Wiley had been the assistant manager of the Vicksburg Wal-Mart on the date of Hedrick's accident. Wiley testified that he arrived at the scene of the accident shortly after Hedrick's fall, and observed oil running down the counter next to where Hedrick had fallen and accumulating on the floor. On cross-examination, Wiley testified that he had no knowledge of whether or not the oil had pooled on the floor prior to Hedrick's fall. He also acknowledged that, in the incident report he had prepared shortly after the accident, he had indicated that the aisle floor was clean and dry.

3

Other Wal-Mart employees testified that no oil had been discovered on the floor of the aisle where Hedrick fell during the several safety inspections conducted prior to his fall. The department manager testified that he had walked the aisle approximately ten to fifteen minutes before the accident, and had seen nothing.

Hedrick's counsel of record changed twice before Paul Loyacono and Jerry Campbell (Loyacono and Campbell)--who would ultimately represent Hedrick at trial--were retained on October 4, 1994. Hedrick's trial began on October 24, 1994. Hedrick moved to amend the pre-trial order on October 5, 1994, the day after Hedrick's previous counsel, Michael Pond (Pond), withdrew as counsel of record. The district court qualifiedly granted this motion on October 17, 1994.

In his motion to amend the pre-trial order, Hedrick sought to add Dr. Tiwari as a witness. The district court found Tiwari to be a "treating physician" and allowed that requested amendment. The district court refused, however, to allow Dr. Tiwari's videotaped testimony concerning the results of Hedrick's myelogram to be put before the jury. The district court likewise refused to amend the pre-trial order to allow Hedrick to depose another doctor, Daniel Dare.

Hedrick moved for judgment notwithstanding the verdict on the question of contributory negligence, or for a new trial on damages, on October 31, 1994. Wal-Mart moved for judgment notwithstanding the verdict, or for a new trial on liability only--or on all

4

issues--on November 7, 1994. These motions were all denied by the district court.

Wal-Mart appeals the judgment, and Hedrick cross-appeals.

**Discussion**

I. Wal-Mart's Appeal

We review the district court's denial of Wal-Mart's motions for directed verdict and for judgment as a matter of law de novo. If there is substantial evidence opposed to the motions, "that is, evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions . . . ," then we must affirm the district court's denial of the motions. *E.E.O.C. v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1443 (5th Cir. 1995) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)). In reviewing the record, we must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party against whom the motions for directed verdict and judgment as a matter of law were filed. *Id.* We review the district court's denial of Wal-Mart's motion for a new trial under an abuse of discretion standard. *Conway v. Chemical Leaman Tank Lines, Inc.*, 687 F.2d 108, 112 (5th Cir.) (citations omitted), *reh'g denied, Conway v. Chemical Leaman Tank Lines, Inc.*, 693 F.2d 133 (5th Cir. 1982).

Wal-Mart contends that Hedrick failed to meet his burden of establishing either that Wal-Mart created the hazard which led to Hedrick's fall or that the hazard existed for a period of time

5

sufficient to impute to Wal-Mart actual or constructive knowledge of its presence. In support of this contention, Wal-Mart correctly notes that Hedrick's proof on these points comes entirely from the testimony of former employees Washington and Wiley. Wal-Mart's argument boils down to nothing more than an attack on the credibility of this testimony, however, and the evidence provided by Washington and Wiley was clearly of such quality and weight that fair-minded jurors could have found that Wal-Mart either created the hazard or had actual or constructive knowledge of its existence. The alleged inconsistencies between Washington's deposition and trial testimony, and Wiley's incident report and trial testimony, do not mandate a different conclusion. There is likewise no merit to Wal-Mart's contention that the district court's denial of its motion for a new trial constituted an abuse of discretion.

Wal-Mart additionally contends that the district court erred in amending the pre-trial order to allow Hedrick to designate Dr. Tiwari as a "treating physician"; Wal-Mart argues that it was error to allow portions of Tiwari's videotaped testimony as this doctor was not a treating physician, but only an ordinary expert. In support of this contention, Wal-Mart asserts that no treatment was provided by Dr. Tiwari; Tiwari merely testified regarding possible treatment, such as epidural steroid, and the possibility and costs of a laminectomy.

This Court will review a district court's decision to amend pre-trial orders in this context under an abuse of discretion

6

standard. *Nobby Lobby, Inc. v. Dallas*, 970 F.2d 82, 93-94 (5th Cir. 1992). The trial court's discretion is to be guided by consideration of the following factors: (1) the importance of the witness's testimony; (2) the prejudice to the other party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to identify the witness. *Id.* (citations omitted). As to the first factor, when Hedrick's counsel moved for this amendment to the pre-trial order, no doctors had yet been deposed by Hedrick's previous counsel; Hedrick sought Tiwari's testimony to confirm the diagnosis of Dr. Cronin, Hedrick's family physician. Hedrick argued that, without these depositions, there could have been no evidence introduced of future disabilities, pain and suffering, or expenses. With regard to the second factor, Wal-Mart argues that it was prejudiced by Tiwari's testimony because Tiwari substantially clouded the picture Wal-Mart had been developing of Hedrick's medical condition. While the timing of this amendment may have provided Wal-Mart with legitimate grounds for a continuance, they nonetheless failed to seek one. As to the third factor, implicitly finding that Wal-Mart was not prejudiced by the amendment to the pre-trial order, the district court never addressed the necessity of a continuance; however, it is noteworthy that Hedrick offered as an accommodation to Wal-Mart a pledge not to oppose any motion brought by Wal-Mart for continuance. Regarding the final factor, Hedrick's counsel at trial were retained approximately three weeks prior to trial. On the day they

were hired, counsel filed a motion with the district court, seeking leave to depose Dr. Tiwari and other doctors. While this factor may somewhat weigh in Wal-Mart's favor, the district court was not obliged to give it determinative significance. All things considered, we are unable to conclude that the district court abused its discretion in admitting this evidence.

II. Hedrick's Cross-appeal

Hedrick contends that the district court erred when it refused to grant Hedrick's motions for judgment as a matter of law--setting aside the jury's finding of contributory negligence--and for a new trial as to damages. We affirm the district court's denial of these motions. Certainly, there is evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might conclude that Hedrick was contributorily negligent. The jury could reasonably have concluded that both Hedrick and the Wal-Mart employees were negligent in failing to notice the oil in the aisle where Hedrick fell. The district court's denial of Hedrick's motion for new trial was not, therefore, an abuse of discretion. *E.E.O.C. v. Louisiana Office of Community Servs.*, 47 F.3d 1438; *Conway v. Chemical Leaman Tank Lines, Inc.*, 687 F.2d 108, *supra*.

We likewise affirm the district court's refusal to amend the pre-trial order to permit testimony by Dr. Dare and to allow Dr. Tiwari's myelogram testimony. The district court concluded that Dr. Dare was a non-treating physician to whom Hedrick was sent by counsel Hedrick retained on October 4, 1994, and the court ruled

8

that it would allow testimony only from treating physicians.  As a corollary to this ruling, the district court excluded Dr. Tiwari's testimony regarding the myelogram procedure, as this testing was integrally connected to the efforts of Dr. Dare.  Under the circumstances of this case, the district court's refusal to allow this evidence was not an abuse of discretion.

Turning to Hedrick's final point of error, relating to the district court's amendment of the pre-trial order, we are unable to conclude that the district court abused its discretion or otherwise erred in ordering that Hedrick pay Wal-Mart up to $1,000 in reasonable attorneys' fees to compensate Wal-Mart in part for the inconvenience and expense of the last-minute depositions of Dr. Tiwari and Dr. Ervin Cronin.

Accordingly, the district court's judgment is

AFFIRMED.