**METROMEDIA COMPANY, Plaintiff,**

v.

**William D. FUGAZY, Travelco, Inc., Fugazy International Corporation, and Roy D. Fugazy, Defendants and Third-Party Plaintiffs,**

v.

**John W. KLUGE, Third-Party Defendant.**

**METROMEDIA COMPANY, Plaintiff,**

v.

**William D. FUGAZY, Sr., and Roy D. Fugazy, Defendants.**

Nos. 87 Civ. 2597 (RLC), 89 Civ. 1185 (RLC).

United States District Court, S.D. New York.

Dec. 5, 1990.

Shea & Gould (Martin I. Shelton, Mary Gail Gearns, of counsel), Hutton Ingram Yuzek Gainen Carroll & Bertolotti (Daniel L. Carroll, David G. Ebert, Scott A. Silverstein, of counsel), New York City, for plaintiff and third-party defendant.

Anderson Kill Olick & Oshinsky, P.C. (Anthony Princi, Steven Cooper, Jordan W. Siev, Robert H. Pees, of counsel), New York City, for defendants and third-party plaintiffs.

## OPINION

ROBERT L. CARTER, District Judge.

### I.

The facts of this case up to December 22, 1988, are set out in the court's earlier opinion, *Metromedia Co. v. Fugazy*, No. 87 Civ. 2597 (RLC) (S.D.N.Y. Dec. 22, 1988) (1988 WL 140773, 1988 U.S.Dist.LEXIS 14645) (Carter, J.). However, in light of subsequent developments, and for the convenience of the reader, they are repeated here.

On March 21, 1985, plaintiff Metromedia Company ("Metromedia") entered a stock purchase agreement with defendants William D. Fugazy, Travelco, Inc. ("Travelco"), and Fugazy International Corporation ("International"), whereby Metromedia ac-

quired 800 newly issued shares of common stock in Fugazy Express, Inc. ("Express"), representing an 80% interest in Express.[1] In July, 1986, Express filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq.*, and in March, 1987, it converted its Chapter 11 reorganization proceeding to a liquidation under Chapter 7 of the Bankruptcy Code. *Id.* §§ 701 *et seq.*

Alleging that the defendants wrongfully misrepresented and/or failed to state material facts regarding the financial condition of Express, Metromedia filed the two actions consolidated here. Metromedia claimed damages for violations of § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2); § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j; Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5; and the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. § 1962(b)–(d), as well as for common-law fraud, negligent misrepresentation, and breach of warranty. The predicate offenses alleged in support of the RICO claim were bankruptcy fraud under 18 U.S.C. § 152, mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and securities fraud under § 10(b), Rule 10b–5, and § 12(2).

Defendants asserted various defenses, and William Fugazy alleged a counterclaim for breach of an employment agreement between himself and Express on the theory that Express was an alter ego of Metromedia.[2] Defendants also impleaded third-party defendant John W. Kluge, claiming that

he had signed a "hold harmless" agreement promising to indemnify defendants, and that he was a controlling person of Express liable under § 15 of the Securities Act and § 20 of the Securities Exchange Act. 15 U.S.C. §§ 70*o*, 78t.

The case came on for jury trial beginning on May 16, 1990. The court granted a directed verdict for Metromedia against William Fugazy, Travelco and International on the claim of breach of warranty, Tr. 2089, 2091, dismissed William Fugazy's counterclaim, Tr. 2087, and dismissed the defendants' controlling-person claim against Kluge. Tr. 2090. The other claims were submitted to the jury.

With respect to the predicate offense of bankruptcy fraud under the RICO claim, the bankruptcy court for this district had ruled on May 15, 1990, that William Fugazy and Roy Fugazy had engaged in acts constituting that offense. *In re Fugazy Express, Inc. (Shimer v. Fugazy)*, 114 B.R. 865 (Bankr.S.D.N.Y.1990).[3] This court ruled that the bankruptcy court's findings collaterally estopped William and Roy Fugazy from denying the bankruptcy fraud, Tr. 2091, and instructed the jury to find that the defendants had committed bankruptcy fraud.

On June 6, 1990, by special verdict, the jury found William Fugazy liable under § 12(2) and RICO. As for the requisite predicate acts for the RICO claim, the jury found that William Fugazy had committed mail fraud, wire fraud, securities fraud under § 12(2) and (as instructed by the court) bankruptcy fraud. The jury rejected the

---

**1.** Prior to the execution of the agreement, International owned 60% of the common stock of Express, and Travelco owned the other 40%. William Fugazy was Chairman of Express and President of International and Travelco at the time. It is alleged that, directly or indirectly, he owned 100% of all three corporations. Defendant Roy D. Fugazy, the son of William Fugazy, was the Secretary of International, Travelco, and Express. Third-party defendant John W. Kluge ("Kluge") is one of Metromedia's general partners.

**2.** Other counterclaims were withdrawn at trial. Transcript of Trial, May 16–June 6, 1990 [hereinafter Tr.], at 2064.

**3.** In particular, that court held that the Federal Communications Commission radio frequency license and permit held by Express was property of the bankrupt estate, and that William and Roy Fugazy had willfully participated in an unlawful transfer of that property to R.D.F. Limousine Corp., another corporation owned and controlled by William Fugazy. 114 B.R. at 871, 875. Metromedia, William Fugazy, and Roy Fugazy were all parties to that action, and the bankruptcy court's findings on these issues were essential to its decision of the case.

plaintiff's other claims and the defendants' third-party claim.

The jury awarded $15,553,930.89 in damages. Tr. 2301, 2304. The court trebled the verdict as to William Fugazy, as provided in the RICO statute, 18 U.S.C. § 1964(c), to $46,661,792.67. Tr. 2308. The judgment was approved by the court on June 27, 1990, and entered on the docket on July 6, 1990.

On July 16, 1990, William Fugazy filed a voluntary petition with the bankruptcy court for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1101 *et seq.* Consequently, the present action was automatically stayed under 11 U.S.C. § 362. Nonetheless, on July 20, the defendants (except Roy Fugazy) filed a motion with this court for judgment notwithstanding the verdict or, alternatively, a new trial. On September 4, the bankruptcy court entered an order modifying the automatic stay

> to the extent necessary ... (A) to permit the Debtor to pursue Debtor's post-trial motion for judgment n.o.v. in the Metromedia action ... and (B) to permit all other parties to pursue post-trial motion practice in the Metromedia Action in connection with Debtor's motion for judgment n.o.v. ...

*In re Fugazy,* No. 90 B 20688 (HS), slip order at 1–2 (Bankr.S.D.N.Y. Sept. 4, 1990). With respect to Fugazy's motion for judgment n.o.v., the modification is retroactive to July 20, 1990. *Id.* at 2.

## II.

■ In considering a motion for judgment n.o.v., the court must view the evidence in the light most favorable to the non-moving party. *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970); *Unijax, Inc. v. Champion Int'l, Inc.,* 516 F.Supp. 941, 950 (S.D.N.Y.1981) (Carter, J.), *aff'd,* 683 F.2d 678 (2d Cir.1982). The motion "will be granted only if (1) there is a complete absence of probative evidence to support the verdict for the non-movant[,] or (2) the evidence is so strongly or overwhelmingly in favor of the movant that reasonable and fair minded [jurors] in the exercise of im-

partial judgment could not arrive at a verdict against [the movant]." *Armstrong v. Commerce Tankers Corp.,* 423 F.2d 957, 959 (2d Cir.), *cert. denied,* 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970). *See, e.g., Unijax, supra,* 683 F.2d at 684; *Simblest, supra,* 427 F.2d at 4.

■ A motion for a new trial will not be granted "unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2803 at 32 (1973). *See, e.g., Dixon v. Maritime Overseas Corp.,* 490 F.Supp. 1191, 1194 (S.D.N.Y.) (Cooper, J.), *aff'd mem.,* 646 F.2d 560 (2d Cir.1980), *cert. denied,* 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981). In considering a motion for a new trial, the court may weigh the evidence and need not view it in the light most favorable to the non-movant. *Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978). Nonetheless, the court must " 'abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice.' " *Id.* (quoting 6A J. Moore, *Moore's Federal Practice* ¶ 59.08[5] at 59–160, –161 (1973)).

The moving party bears the burden of establishing that it is entitled to judgment n.o.v. or a new trial. For the reasons stated below, the defendants have not met this burden, and their motion must be denied.

## III.

■ Section 12 of the Securities Act of 1933 provides, in pertinent part:

> Any person who ...
>
> (2) offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission) ...

shall be liable to the person purchasing such security from him, who may sue ... to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security....

15 U.S.C. § 77*l*. The defendants allege that there is no evidence to support a claim that the sale of securities in question was "by means of a prospectus or oral communication" so as to be subject to § 12(2). Stuart Subotnick, one of Metromedia's general partners, testified before the jury that he had several telephone conversations with William Fugazy, in which Fugazy's object was

> [t]o convince us [i.e., Metromedia] to continue the acquisition of Fugazy Express, to explain to me about the various prospects that Fugazy Express had in various other areas that would improve the business. Generally, all of the conversations were to convince us to go forward and acquire Fugazy Express.

Tr. 148. This evidence is sufficient to support the jury's finding that the sale was "by means of ... oral communication" within § 12(2). There is also sufficient evidence in the record to establish that William Fugazy never adequately informed plaintiff of the financial condition of Fugazy Express, so that the jury could have found that the communications at issue "omit[ted] to state a material fact necessary in order to make the statements ... not misleading."

■ Defendants also argue that there was no causal relationship between the misleading statements and the plaintiffs' loss. However, causation is not required to establish a seller's liability under § 12(2). *Akerman v. Oryx Communications, Inc.*, 810 F.2d 336, 344 (2d Cir.1987). It is sufficient that the defendants made the misleading statements in furtherance of the sale, that the plaintiff did not know of their falsity, and that the plaintiff purchased the securities.

Defendants' further contention that § 12(2) applies only to public offerings is plainly without merit. *See Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d

658 (1988); *Gould v. Ruefenacht*, 471 U.S. 701, 105 S.Ct. 2308, 85 L.Ed.2d 708 (1985).

## IV.

To maintain a civil action under RICO, the plaintiff must show that it was "injured in [its] business or property by reason of a violation of [18 U.S.C.] section 1962." 18 U.S.C. § 1964(c). Section 1962 prohibits certain activities related to a "pattern of racketeering activity." A "pattern of racketeering activity" requires at least two acts of "racketeering activity," *id.* § 1961(5), which is defined to include, among other things, the offenses of "mail fraud" and "wire fraud," and "any offense involving fraud connected with a case under title 11 [i.e., the Bankruptcy Code], [or] fraud in the sale of securities ... punishable under any law of the United States." *Id.* § 1961(1)(B), (D).

### A.

■ Defendants argue that there is no basis for the jury's findings that Metromedia was injured "by reason of" mail fraud and wire fraud, because there was no "causal nexus" between the racketeering activity and the alleged injury. Defendants' Mem. at 17. Specifically, defendants claim that the plaintiff did not rely on the fraudulent statements themselves, but only on the incorrect corroboration of those statements by plaintiff's counsel. *See Ashe v. 1907 Ditmas Ave. Realty Corp.*, 125 A.D.2d 432, 509 N.Y.S.2d 364, 365 (1986); *Arnold Constable Corp. v. Chase Manhattan Mortgage & Realty Trust*, 59 A.D.2d 666, 398 N.Y.S.2d 422, 423 (1977).

There is, however, no evidence in the record to suggest that Metromedia's attorneys independently corroborated the information contained in the purchase agreement. An essential part of the testimony that the defendants cite on this point is contained in a deposition not admitted into evidence. Cooper Aff. ¶¶ 75–76 (deposition testimony of Stuart Subotnick). The record does contain evidence that the misrepresentations were made to Metromedia, Tr. 126–32, 145–48, that Metromedia went

through with the purchase, and that Metromedia would not have gone through with the purchase if it had known the true facts. Tr. 133, 260. From this evidence, a reasonable jury could infer that Metromedia relied on defendants' representations to its detriment. Even if only a third party, and not the plaintiff, was deceived, the requirement of reliance is met if the plaintiff was injured by the fraud. *Shaw v. Rolex Watch USA, Inc.,* 726 F.Supp. 969, 973 (S.D.N.Y.1989) (Conner, J.).

### B.

■ Defendants argue that the plaintiffs have waived the right to assert the collateral-estoppel effect of the earlier judgment by not raising the claim of collateral estoppel in a timely manner. The bankruptcy court's decision, however, was handed down the day before the present case went to trial. Plaintiff's counsel made reference to the decision in his opening statement to the jury, Tr. 45, and raised the issue of collateral estoppel with the court before plaintiff had rested. Tr. 842. By contrast, in the cases cited by the defendants, the party held to have waived the preclusive effect of a prior judgment had raised that issue only after a full trial on the merits and entry of a judgment against it. *See Harbeson v. Parke–Davis, Inc.,* 746 F.2d 517 (9th Cir.1984) (first raised on appeal); *Southern Pac. Communications Co. v. American Tel. & Tel. Co.,* 740 F.2d 1011 (D.C.Cir.1984) (first raised on motion for relief from judgment).[4]

The fact that plaintiff also presented evidence of bankruptcy fraud to the jury does not indicate that it intended to waive the benefit of collateral estoppel and relitigate the issue. Indeed, although the defendants were estopped from denying the bankruptcy-fraud claim, it was still necessary for the jury to determine whether the bankruptcy fraud was part of a pattern of racketeering activity. *See* Tr. 2243 (charge to the jury).

### C.

■ Defendants further argue that the violation of § 12(2) is not an "offense involving ... fraud in the sale of securities." In particular, they argue that a violation of § 12(2) is a criminal offense under § 24 of the 1933 Securities Act, 15 U.S.C. § 77x, only if the violation is "willful," and that the court failed to instruct the jury on willfulness. While this argument may be correct, defendants should have raised this matter with the court before the jury retired to begin its deliberations. The court will not grant a new trial on the basis of an erroneous jury charge when a party might have obtained the correct jury charge by specifically bringing the matter to the attention of the court at the proper time. *See* Rule 51, F.R.Civ.P.; *Palmer v. Hoffman,* 318 U.S. 109, 119–120, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943); 11 C. Wright & A. Miller, *supra,* § 2805 at 39.

■ Defendants also argue that, by its very nature, § 12(2) does not involve "fraud." Again, the defendants should have raised this point at trial. Moreover, it hardly seems possible that a criminal (that is, "willful") violation of § 12(2), which the Court of Appeals for this circuit has characterized as an "anti-fraud measure," *Akerman, supra,* 810 F.2d at 344, might not involve "fraud." Even if it is possible, defendants have not explained how, in this particular case, they could have violated § 12(2) without engaging in fraud. In general, "the penalties allowed under ... law are to be applied not in abstraction but to the specific facts and conditions involved." *United States v. Simon,* Crim.No. 90–143, slip op. at 9 (D.V.I. Nov. 1, 1990) (1990 WL 174602, 1990 U.S. Dist.LEXIS 14985, *11) (Carter, J.). By its terms, RICO applies to *"any* offense *involving* ... fraud in the sale of securities," 18 U.S.C. § 1961(1)(D) (emphasis added), and thus encompasses the offense in issue.

### V.

■ The parties are in agreement that the terms of the warranties in the stock-

---

4. Rule 8, F.R.Civ.P., which requires that a defendant's answer set forth any defense of collateral estoppel affirmatively, has no application to the use of collateral estoppel by a plaintiff.

purchase agreement were not fulfilled. Although "reliance" is an element of breach of warranty, the only reliance that is necessary is the buyer's belief that it was purchasing the seller's promise as to the truth of the matters stated in the warranty. *CBS Inc. v. Ziff–Davis Publishing Co.*, 75 N.Y.2d 496, 503, 553 N.E.2d 997, 1001, 554 N.Y.S.2d 449, 453 (1990). In other words, reliance is established if "the express warranties are bargained-for terms of the seller." *Id.* at 506 n. 5, 553 N.E.2d at 1002 n. 5, 554 N.Y.S.2d at 454 n. 5. Reliance, in this sense, is not negated by the fact that the buyer questioned or disbelieved the accuracy of the statements prior to agreeing to the contract. *Id.* at 505–06, 553 N.E.2d at 1002, 554 N.Y.S.2d at 454. Rather, a warranty " 'is intended precisely to relieve the promisee of any duty to ascertain the fact for himself.' " *Id.* at 503, 553 N.E.2d at 1001, 554 N.Y.S.2d at 452 (quoting *Metropolitan Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir.1946) (L. Hand, J.)).

Defendants argue that there is a triable issue as to whether the warranties were "bargained for." Even if the warranties were not the subject of explicit discussions, however, their inclusion in the written contract establishes that they were part of the bargain reached between the plaintiff and the defendants. Defendants have not alleged that they agreed to the warranties as a result of fraud, mistake or duress, and they have offered no theory that would explain how the warranties could possibly be included in the contract if Metromedia did not intend to obtain the benefit of them. Under these circumstances, it is utterly impossible that the warranties could be anything other than "bargained-for terms" of the contract.

There is no basis for defendants' contention that the jury's damage award applies only to the RICO claim against defendant William Fugazy, and not to the breach of warranty claim against all the defendants. The court specifically instructed the jury to award damages on the breach of warranty claim, Tr. 2238, and later repeated the instruction to be sure that the jury remembered to award damages for breach of warranty. Tr. 2280.

## VI.

Defendants renew their objections, stated on the record, to the jury charge. Tr. 2092–2115, 2272–78. The objections remain overruled, and the court stands by its charge.

Defendants also renew their arguments, stated on the record, opposing the court's dismissal of their counterclaim and third-party claim. Tr. 2074–76. For the reasons stated on the record, the court rejects these arguments. Tr. 2087–88, 2090–91.

Defendants also argue that plaintiff's counsel should have been disqualified. The court has previously ruled on this issue and has no reason to reconsider its decision. *Metromedia, supra,* slip op. at 14.

Defendants' contention that the jury verdict was contrary to the weight of the evidence is meritless.

## VII.

The court observes that the judgment contains two errors due to oversight or clerical mistake. First, three times the jury's verdict of $15,553,930.89 is $46,661,-792.67, not $46,661,819.67 as stated in the judgment. Second, the judgment assesses treble damages against the corporate defendants as well as against William Fugazy, although the jury did not find the corporate defendants liable under the RICO statute. Rather, the corporate defendants are liable only for breach of warranty, and therefore the judgment against them should be for single damages.

The court is empowered to correct such mistakes on its own initiative. Rule 60(a), F.R.Civ.P. Accordingly, the judgment will be amended to hold William Fugazy, Travelco and International jointly and severally liable for $15,553,930.89, and to hold William Fugazy solely liable for the remaining $31,107,861.78.

## VIII.

For the reasons stated above, the defendants' motion for judgment notwithstanding the verdict or alternatively a new trial

is denied. On the court's own initiative, the judgment previously entered in this case is set aside, and a new judgment shall be entered in the form approved by the court.

IT IS SO ORDERED.