Danny Lee **GRIMM**, et al., Plaintiffs,

v.

Stanley L. **LANE**, et al., Defendants.

No. C–1–91–011.

United States District Court,
S.D. Ohio,
Western Division.

March 24, 1995.

Alphonse Adam Gerhardstein, Cincinnati, OH, for Danny Lee Grimm and Gary W. Bennett.

Danny Lee Grimm, Mansfield, OH, pro se.

Gary W. Bennett, Mansfield, OH, pro se.

Marianne Pressman, Asst. Atty. Gen., Cincinnati, OH, for defendants.

## *ORDER*

SPIEGEL, District Judge.

This matter is before the Court on Defendants' Motion for a New Trial (doc. 107), and Defendants' Motion for Judgment as a Matter of Law (doc. 108). The Plaintiffs responded to both motions (doc. 116), and the Defendants replied (doc. 123). The Plaintiffs also filed a Motion for Attorney Fees (doc. 109), to which the Defendants never responded.

## BACKGROUND

Danny Lee Grimm, Edgar Bennett and another inmate planned and attempted to escape from Orient Correctional Facility.

They failed. As a result on September 13, 1989, all three inmates were sent to a maximum security prison, the Southern Ohio Correctional Facility at Lucasville (hereinafter "SOCF").

While being transferred to SOCF, the inmates remarked that no one was going to make them get a haircut at SOCF. Upon arriving, however, the inmates cooperated with the guards. After being strip searched and going through the normal procedures of the prison, the Plaintiffs were escorted to a holding area. At all times, the Plaintiffs wore handcuffs. Ron Tawney and Stanley Lane took the inmates one by one from the holding area to their cells. Upon arriving at the cell, the two guards warned the inmates not to cause any trouble and then beat the inmates severely with their hands and their PR–24s. A PR–24, which is similar to nightsticks that police carry, is considered a deadly weapon. No one contests that these beatings occurred. As a result of the beatings, all three inmates suffered severe mental and physical damage. Danny Grimm and Edgar Bennett eventually filed this lawsuit. The third inmate testified at trial, but was not a party to this lawsuit.

The disputed facts are whether the remaining Defendants, Paul Duke, Ralph Miller, Chad Riggs and Gerry Webb knew of the beatings, helped plan the beatings, and eventually covered up the beatings. The Plaintiffs presented substantial evidence at trial that all of the Defendants planned the beatings and helped to cover them up, by threatening the inmates. In fact, Ron Tawney, one of the guards who beat the prisoners, testified for the Plaintiffs. The Defendants all took the stand and vehemently denied having any knowledge of the beatings or participating in a cover up. Therefore, it was a swearing contest properly left for the jury to decide.

## DISCUSSION

### I. THE JURY'S DECISION WAS SUPPORTED BY SUFFICIENT EVIDENCE AND SHOULD BE LEFT STANDING.

The Defendants have moved for a judgment as a matter of law. The Plaintiffs object, contending that sufficient evidence supported the jury's decision. We agree.

In order to grant a judgment as a matter of law, the Court must determine whether sufficient evidence exists to raise a question of fact for the jury. *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir.1992) (citing *Morelock v. NCR Corp.*, 586 F.2d 1096, 1104 (6th Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979)). "In determining whether evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury." *Morelock*, 586 F.2d at 1104. "Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor." *Id.* Courts should exercise great care in deciding whether to intrude upon the jury's domain.

### A. Failure to Protect

█ Sufficient evidence supports the jury's findings that the Defendants failed to protect the Plaintiffs, and subjected them to cruel and unusual punishment under the Eighth Amendment. To prove liability, the Plaintiffs had to show that the Defendants "failed to act despite [their] knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). In *Farmer*, prison officials placed a transsexual in the general population. *Id.* at ——, 114 S.Ct. at 1975. The inmate was allegedly beaten and raped within two weeks of being placed in the general population. *Id.* The Supreme Court held that a prison official violates the Eighth Amendment when two requirements are met. "First, the deprivation alleged must be, objectively, 'sufficiently serious,' . . . a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at ——, 114 S.Ct. at 1977 (citations omitted). Inflicting serious physical and mental injuries without cause constitutes a "sufficiently serious" denial of one's rights. No one contests that Ron Tawney and Stanley Lane used their PR–24s to beat up the Plaintiffs.

The Plaintiffs showed in trial that someone could die from being beaten with a PR–24, and, in fact, the Plaintiffs sustained serious injuries from the beatings. Therefore, the jury had ample evidence to find a deprivation of the Plaintiff's constitutional rights.

█ Second, to hold the prison officials liable, the inmates must show the officials acted with "deliberate indifference" to inmate health or safety. *Id.* In order to prove deliberate indifference, an inmate must show that the prison official knew of an excessive risk to inmate health or safety and disregarded that risk. *Id.* at ——, 114 S.Ct. at 1979. The prison officials' knowledge was a hotly contested issue at trial. Ron Tawney testified that all of the Defendants planned the inmates' beatings, and agreed that it should happen. The Defendants claimed they had no idea it was going to happen. Therefore, it was a swearing contest properly left for the jury to decide. The jury found that the Defendants knew the inmates were going to be beaten and participated. in the decision to beat the inmates. The jury had sufficient evidence to find both a deprivation of rights and 'deliberate indifference' by the guards. We find no reason to disturb this finding.

█ Additionally, the Plaintiffs presented evidence that the Defendants created an atmosphere of reprisal and retaliation at the prison. The Plaintiffs claim this atmosphere is additional evidence of the Defendants' "failure to protect." Particularly, Grimm and Bennett claimed that this atmosphere caused them to fear for their lives. The Sixth Circuit has held that "[w]hile a prisoner does not need to demonstrate that he has been the victim of an actual attack to bring a personal safety claim, he must establish that he reasonably feared such an attack." *Thompson v. County of Medina, Ohio,* 29 F.3d 238, 242 (6th Cir.1994) (citing *Marsh v. Arn,* 937 F.2d 1056, 1062 n. 5 (6th Cir.1991)).

After *Farmer,* the inmates must show that the guards had actual knowledge of the risk of harm to the Plaintiffs and did nothing about it. *Farmer,* —— U.S. at —— – ——, 114 S.Ct. at 1980–81. Both Grimm and Bennett testified about the constant fear they lived in after the guards beat them. Ron

Tawney, one of the guards, testified that there would be "consequences" if the inmates reported the beatings. The Plaintiffs testified that once they reported the beatings, the guards' warnings came true. Both Plaintiffs heard guards laughing outside their cell, a prison nurse told Grimm that he would not be treated if he pursued his grievance, and a prison official returned another beaten inmate's request for protection with a threat that put the Plaintiffs in greater fear. Moreover, Ron Tawney admitted visiting Bennett after the beating to get him to change his story. Even some of the Defendants' witnesses, including Warden Terry Morris, testified that a prisoner could reasonably fear reprisals after reporting a wrongdoing. Therefore, the jury had plenty of evidence to determine that the fear the Plaintiffs suffered was reasonable.

Second, the Plaintiffs needed to demonstrate that the guards knew a risk of harm was present. Defendants' own testimony revealed that they knew about the danger of reprisals for reporting wrongdoing in the prison. Furthermore, the testimony of Shirley Pope and Ron Tawney established that a pervasive risk of reprisal existed once the Defendants failed to admit to the beatings. Such evidence is sufficient to leave the question to the jury. Furthermore, much of the evidence is cumulative of Defendants' "failure to protect." Accordingly, the jury had more than sufficient evidence to find that the Defendants failed to protect the Plaintiffs, in violation of the Plaintiffs' Eighth Amendment rights.

**B. Conspiracy**

█ The Plaintiffs also alleged that the Defendants conspired to give them an "attitude adjustment" or whipping, and then conspired to cover up the beatings. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Agg v. Flanagan,* 855 F.2d 336, 341 (6th Cir.1988) (citing *Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir.1985)). To prevail in this cause of action, the Plaintiffs needed to establish: 1) two or more persons conspired; 2) to deprive, either directly or indirectly, the Plaintiffs their right to be free

from cruel and unusual punishment; and 3) at least one of the members of the conspiracy acted in furtherance of that conspiracy; and 4) the Plaintiffs suffered an injury as a result. *Johnson v. Hills & Dales General Hosp.*, 40 F.3d 837, 839 (6th Cir.1994).[1] The Plaintiffs presented evidence of the guards gathering around the doorway at the cell block and discussing the incoming prisoners. The guards discussed how the Plaintiffs and inmate Lewis had attempted to escape from the Orient Correctional Facility. Furthermore, Ron Tawney testified that the guards discussed the fact that the Plaintiffs needed an "attitude adjustment" to show them that the guards are in charge at SOCF. Tawney and Lane, who were responsible for taking the prisoners to the cells, said they would take care of the "attitude adjustment." From this evidence and the beatings, a reasonable jury had sufficient evidence to conclude that the Defendants conspired to and carried out the beating of the Plaintiffs.

Additionally, there was substantial evidence that the officers spoke after the beatings and agreed to say nothing about them. Post-beating investigations revealed that the Defendants never admitted any knowledge of the beatings at the time they happened. Therefore, the jury had sufficient evidence to find that the Defendants conspired to cover up the beatings after the fact. The jury's verdict was proper and should be left standing on the conspiracy issue.

## II. The Jury's Verdict Was Supported by the Evidence, and therefore, a New Trial is Not Merited.

 The Defendants have also moved the Court to vacate the jury verdict, and hold a new trial. A trial court may grant a new trial where the jury's verdict is against the clear weight of evidence, *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 343 (6th Cir.1993), the damages are excessive, or there were substantial errors of law in the trial that resulted in prejudice. 11 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2805 at 37–8 (1973). A

new trial will not be granted on "grounds not called to the court's attention during the trial unless the error was so fundamental that a gross injustice would result." *Id.* at 41. The burden of showing harmful prejudice rests on the party seeking the new trial. *Clarksville–Montgomery County School Syst. v. United States Gypsum*, 925 F.2d 993, 1002 (6th Cir. 1991). The district court may weigh the evidence and assess the credibility of witnesses in making its determination. *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1433 (4th Cir.1985). Ultimately, the decision whether to grant a new trial rests within the discretion of the district court. *Fryman v. Federal Crop Ins. Corp.*, 936 F.2d 244, 251 (6th Cir.1991).

## A. The Jury's Verdict Was Not Against the Clear Weight of the Evidence.

The jury's verdict is supported by the evidence. As we discussed above, sufficient evidence exists to support the jury's verdict. After reviewing the proceedings and the witnesses who testified, this Court finds that the jury's verdict was not against "the clear weight of the evidence," but rather was supported by the majority of the evidence. Accordingly, a new trial is not merited.

## B. There Were No Evidentiary Errors Justifying a New Trial.

### 1. Admittance of Shirley Pope's report and testimony does not merit a new trial.

The thrust of Defendants' motion for a new trial is that Ms. Pope's report was prejudicial and hearsay and should not have been admitted. Furthermore, the Defendants' claim that Ms. Pope should not have been allowed to testify as an expert. We disagree and reaffirm our prior decision allowing her to testify.

Only those errors that cause substantial harm to the losing party justify granting a new trial. 11 Wright & Miller, *supra*, § 2805, p. 41; *see also Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir.1992)

---

**1.** *Johnson* was filed under 42 U.S.C. 1985(3). The factors, however, to prove conspiracy to violate one's civil rights are similar under section

1985 and section 1983. Therefore, those factors are applicable in this case.

(holding evidentiary error must be prejudicial, in order to merit new trial). The admission of Shirley Pope's report and testimony did not cause substantial harm to the Defendants, and thus, does not justify a new trial.

### a. It was not error to allow Ms. Pope to testify as an expert witness.

The Defendants objected to Ms. Pope being allowed to testify as an expert. Rule 26(a)(2)(C) requires parties to identify any expert witnesses 90 days prior to trial. Fed. R.Civ.P. 26(a)(2)(C). "A new trial may be ordered when the testimony of an expert witness, who has not been identified prior to trial, results in prejudicial surprise 'inconsistent with substantial justice.'" *Genmoora Corp. v. Moore Business Forms, Inc.*, 939 F.2d 1149, 1156 (5th Cir.1991) (quoting *Conway v. Chemical Leaman Tank Lines, Inc.*, 687 F.2d 108, 111–12 (5th Cir.1982)). In *Genmoora*, the Plaintiff did not identify that one of its witnesses would testify as an expert to a crucial matter for trial. The Defendant objected when the Plaintiff tried to introduce this witness as an expert. The Fifth Circuit stated that it has limited " 'reversible error from unfair surprise ... to situations where a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify.'" *Id.* (quoting *Conway*, 687 F.2d at 112). The Fifth Circuit held that the Defendant failed to "meet this stringent test." *Id.* Furthermore, the Fifth Circuit stated, "[a]lthough [Plaintiff's] discovery responses may have been misleading, we cannot conclude that [Defendant] was the victim of prejudicial surprise of such magnitude that the admission of [the expert's] testimony was inconsistent with substantial justice." *Id.* Although we believe that the Plaintiffs failed to identify Ms. Pope as an expert 90 days prior to trial, we believe the Defendants were not the victims of prejudicial surprise that resulted in a substantial injustice.

A district court has broad discretion to admit expert testimony. *See Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) (a trial judge "has broad discretion in the matter of admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous."). In this case, the Defendants were aware at least six months prior to trial that Ms. Pope was going to testify. The parties presented a pretrial order to the Court in March 1994, six months prior to the actual trial date, which included Ms. Pope as a witness and a brief synopsis of her testimony. The Defendants were free to depose Ms. Pope during the discovery phase of the case, which they chose not to do. Ms. Pope was not a surprise witness. The Defendants had ample knowledge of the fact that she was going to testify, and to the contents of her testimony. Therefore, we conclude that the Defendants were not the victims of prejudicial surprise of such magnitude as would merit a new trial.

Additionally, the trial court has broad discretion in determining whether to allow a witness to testify as an expert. *Davis v. Combustion Engineering, Inc.*, 742 F.2d 916, 919 (6th Cir.1984). Federal Rule of Evidence 702, which gives the courts guidance on the issue of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In this case, the Court found that Ms. Pope qualified as an expert. The Court made this finding after both sides were allowed to voir dire the witness. Through her education, a Master's Degree in Corrections from Xavier University, and employment, the Court found Ms. Pope had specialized knowledge that would help the trier of fact understand the evidence. Therefore, she qualified as an expert. Still, the Court instructed the jury to "give her testimony such weight as you think it deserves." Pope Voir Dire at 45. The Defendants were given the opportunity not only to voir dire Ms. Pope, but also to cross examine her. Moreover, the Defendants had Mr. Morris testify, who also had received a Master's Degree in Corrections from Xavier University. Morris Direct at 63. He had ample opportunity to undermine Ms. Pope's testimony.

■ Finally, much of the evidence Ms. Pope presented supported what other witnesses had to say or helped the jury understand the rest of the testimony being presented. As such, Ms. Pope's testimony was relevant, not prejudicial. Therefore, the Court correctly ruled, and the admission of Ms. Pope's testimony does not merit a new trial.

### b. Ms. Pope's report was properly admitted.

■ The Defendants allege that Ms. Pope's report was hearsay and should not have been admitted. Federal Rule of Evidence 803(8)(C) provides that records, reports and other such "factual findings resulting from an investigation made pursuant to authority granted by law," are permitted into evidence, "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8). Ms. Pope's report falls under this exception to the hearsay rules.

Ms. Pope is a senior research associate for the Correctional Institution Inspection Committee. Terry Morris, then the Warden of SOCF, requested Ms. Pope prepare a report outlining concerns at SOCF. Therefore, it was imperative that the report be accurate, so the Warden could properly assess the conditions at the prison. Ms. Pope spent time and effort interviewing various people within the prison, including guards and prisoners. All statements were taken in the ordinary course of preparing the report. The report had all the indicia of being reliable, and thus, was properly admitted. In fact, in *Hill v. Marshall,* 962 F.2d 1209 (6th Cir.1992), the Sixth Circuit stated that a similar report by Ms. Pope was admissible under Rule 803(8). *Id.* at 1215 n. 2 ("Pope's report ... is admissible under Federal Rule of Evidence 803(8), the exception for public records and reports").

■ The Defendants also object to statements of prisoners cited within the report. They allege that these statements are hearsay, and should have been stricken from the report. For this proposition the Defendants cite *Miller v. Field,* 35 F.3d 1088 (6th Cir. 1994). In *Miller,* the Court admitted a report against a criminal defendant, which included statements by the victim, prosecutor, and various witnesses. *Id.* at 1091. All of those statements were admitted to prove the Defendant committed the crime. *Id.* In this case, the Court did not let in the report to show that the Defendants conspired to beat the Plaintiffs. The statements within Ms. Pope's report are not hearsay, because they were not admitted to prove the truth of the matter asserted. Fed.R.Evid. 801(c) ("Hearsay is a statement ... offered in evidence to prove the truth of the matter asserted."). Rather, Ms. Pope's report was admitted to help the jury understand what Ms. Pope based her findings and analysis upon.

Finally, unlike *Miller,* there was overwhelming evidence from which the jury could make their findings of liability. While the report allowed the jury to understand Ms. Pope's analysis, the report in no way changed the outcome of the trial. Unlike *Miller,* the report did not point directly to the Defendants, but rather only provided background for the atmosphere at SOCF. Therefore, this case is distinguishable from *Miller.*

■ The Defendants also claim the report was prejudicial, and therefore, should not have been admitted. Federal Rule of Evidence 403 provides that "[e]vidence may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice...." Fed.R.Evid. 403 (emphasis added). Under this standard, the report was properly admitted. The report and Ms. Pope's testimony provided the jury with an understanding of SOCF's atmosphere at the time of the beatings. The testimony of the Plaintiffs, a prior inmate, Ron Tawney and even the Defendants further aided the jury in making this determination. The report also helped the jury in understanding how Ms. Pope formed her conclusions. Finally, Ms. Pope, as a government employee, had no bias or prejudice against either the guards or the inmates that would cause her to slant her report in favor of one party or another. Accordingly, the Defendants have failed to demonstrate that admission of the report justifies a new trial.

2. The excessive force instruction was correct.

■■■■■■ The Defendants now object to the excessive force instruction, because it used the term "Defendants," rather than applying specifically to Stanley Lane. First, the Defendants did not object to this in the instruction conference, and thus, did not properly preserve their objections. *See Metromedia Co. v. Fugazy,* 753 F.Supp. 93 (S.D.N.Y.1990) ("The Court will not grant a new trial on the basis of an erroneous jury charge when a party might have obtained the correct jury charge by specifically bringing the matter to the attention of the court at the proper time."), *aff'd* 983 F.2d 350 (2d Cir. 1992). Second, even if they had properly preserved their objection, the jury was fully capable of understanding the instructions, and the Defendants claim does not merit a new trial. *See Fryman v. Federal Crop Ins. Corp.,* 936 F.2d 244, 251 (6th Cir.1991) ("The critical inquiry with regard to jury instructions is 'whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried.'") (quoting *Bagherzadeh v. Roeser,* 825 F.2d 1000, 1003 (6th Cir.1987)). The statement of claims laid out exactly what claims were brought against whom. It was read prior to the excessive force instruction, and said that "[t]he Plaintiffs ... claim that Ron Tawney and Defendant Stanley Lane used excessive force upon them, and that Defendants Paul Duke, Ralph Miller, Chad Riggs and Gerry Webb failed to stop Tawney and Lane from using excessive force on them, and failed to protect them from the beatings...." Jury Instructions, p. 11. Furthermore, the verdict forms only asked whether Stanley Lane used excessive force. Verdict Form, p. 1. We have full confidence in the jury's intelligence and ability to understand the instructions and verdict forms, and believe that they provided everyone with "sufficient guidance concerning the issues to be tried." The verdict form only permitted the jury to award damages against those they found liable. The jury found a conspiracy existed, and therefore, the Defendants were properly subject to liability for each other's acts. The Defendants were not prejudiced by the jury instructions, and we DENY Defendants' Motion for a New Trial.

3. The compensatory damage award was not excessive.

■■■■■ The Defendants argue that the damage awards were "clearly excessive" and should be reversed. A jury's verdict should not be set aside, unless "it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Hill,* 962 F.2d at 1215 (citing *Green v. Francis,* 705 F.2d 846, 850 (6th Cir.1983)). In this case, there was sufficient evidence to support the jury's finding of damages.

The jury awarded Danny Grimm $75,000 and Gary Bennett $115,800 in compensatory damages. Stanley Lane and Ron Tawney took each of the prisoners to their cells, and then beat them with their fists and PR–24's. The prisoners wore handcuffs at all times. Both prisoners required medical attention from bruising and swelling on their bodies. Grimm also had a lump on his head and blood in his urine. Bennett suffered injury to his mental health, for which medication had to be prescribed. Furthermore, the Plaintiffs feared reporting the beatings, and for the 168 days they remained at SOCF, they feared reprisal by the guards. In light of their constant fear and substantial physical and mental damages, the compensatory damages awarded were very reasonable. *See Hill,* 962 F.2d at 1215 (holding $95,000 in compensatory damages reasonable, where prisoner denied medication for tuberculosis bacteria).

4. The punitive damage award was correct.

■■■■■ The Supreme Court has stated that punitive damages are appropriate under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Substantial evidence existed for the jury to find that each defendant acted with callous indifference to the Plaintiff's constitutional rights. *See Hill,* 962 F.2d at 1217 (holding a prison official who is indifferent to a prison-

er's medical needs can be assessed punitive damages). The Defendants all agreed to give the Plaintiffs an "attitude adjustment" (beating). Tawney and Lane volunteered to carry out these beatings. The prisoners had not acted out of line, and the beatings were completely unprovoked. Punitive damages are awarded to deter such actions in the future. *Smith,* 461 U.S. at 49, 103 S.Ct. at 1636. The jury awarded punitive damages in different amounts against each Defendant. This reflects the jury's serious deliberation with regard to this issue. The jury awarded $52,500 to each Plaintiff against Stanley Lane, who is the guard that actually beat the Defendants. Paul Duke, who worked inside the console and handled the keys to the cell block, had to pay $37,500 to each Plaintiff in punitive damages. Chad Riggs, the supervisor, had to $30,000 in punitive damages to each Plaintiff. Finally, hall officers Ralph Miller and Gerry Webb were each held liable for $15,000 in punitive damages. None of these awards are excessive or lack support in the record. Accordingly, this Court finds no basis to set aside the jury's findings of damages.

### III. THE PLAINTIFFS ARE A PREVAILING PARTY, AND THUS, ARE ENTITLED TO REASONABLE ATTORNEY FEES.

#### A. Attorney Fees

■ In this case, the Plaintiffs filed a motion for attorney fees, which the Defendants did not oppose. According to 42 U.S.C. § 1988, this Court has the authority to award the prevailing party a reasonable attorney's fee. In considering a motion for attorney fees, the Court must determine whether the petitioning Plaintiff was the prevailing party. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Id.* (citations omitted). As discussed

above, the Plaintiffs succeeded in achieving a favorable verdict, and thus, are the prevailing party.

Next, this Court must determine what is a "reasonable" fee. The Supreme Court has held that a good measure of attorney fees is to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* After making this calculation, this Court must then exclude any excessive, redundant or otherwise unnecessary hours. *Id.* at 434, 103 S.Ct. at 1939.

To begin this calculation, we must determine if the claimed hourly rates are reasonable. The Plaintiffs request hourly rates of $195 for Alphonse Gerhardstein and $100 for Sarah Poston. Furthermore, they request $45 for their law clerks. The State has not contested any of these hourly rates. Additionally, the hourly rates claimed are in compliance with those normally charged by attorneys with similar experience in Cincinnati. Therefore, this Court finds the attorneys' hourly rates to be reasonable.

Once this Court has determined the hourly rate, it must determine whether the number of hours worked were reasonable. *Northcross v. Board of Ed. of Memphis City Schools,* 611 F.2d 624, 636–37 (6th Cir.1979). The Plaintiffs' attorneys submitted affidavits with detailed statements of the hours they worked. After analyzing the statements, this Court finds that the hours were not duplicative, redundant or excessive. Considering that this case went to trial and lasted five days, 253 hours for the lead attorney and 100 hours for the second attorney appears appropriate. The Defendants did not object to the amount of hours claimed. Accordingly, this Court finds the hours claimed to be reasonable.

The Plaintiffs requested $69,872.50 in total fees. Since this represents a little less than the hours worked times the hourly rate, this Court hereby GRANTS Plaintiffs' motion.[2]

#### B. Costs and Expenses

■ The Plaintiffs also requested that they be reimbursed for their costs and ex-

---

2. The Plaintiffs submit that Mr. Gerhardstein worked 253.7 hours. Yet, when they multiplied his total fees, it appears they used 253 hours.

This difference is de minimis, and thus, the Court will grant the total as calculated by the Plaintiffs.

penses. The Plaintiffs requested $1,145.90 for court reporters, $21 for overnight mail, $189.52 for DocuCopy (joint ex), $88.62 for DocuCopy (Foamboard mounting), $193.95 for lodging, $44.66 for meals, $150 for long distance calls, $75 for copies, $551.32 for travel mileage ($0.28 a mile), $25 for court files, $59.60 for witness Ron Lewis, $40 for witness Ron Tawney, and $140 for mileage for witness Ron Lewis. Thus, their total request is $2,724.57.

There are two principle concepts for awarding out-of-pocket expenses. "Some expenses are included in the concept of attorney's fees, as 'incidental and necessary expenses incurred in furnishing effective and competent representation,' and thus are authorized by section 1988." *Northcross,* 611 F.2d at 639 (quoting Congressman Drinan, 122 Cong.Rec. H12160 (daily ed. Oct. 1, 1976)). These are usually the expenses that would be charged to a fee paying client, such as reasonable photocopying, travel and telephone costs. *Id.*

Secondly, costs to be paid to a third party can be recovered according to the guidelines of 28 U.S.C. § 1821 and 28 U.S.C. § 1920. According to section 1920, a court may tax as costs "[f]ees and disbursements for printing and witnesses." 28 U.S.C. § 1920(3). Section 1821 states "[a]ll normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title." 28 U.S.C. § 1821(c)(4). Furthermore, the Sixth Circuit enunciated some of the costs recoverable under this section: "These include, among others, docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps." *Northcross,* 611 F.2d at 639. The Plaintiffs requested costs all fall within the parameters of these two concepts, and the Defendants did not object to these requests. Accordingly, we hereby GRANT the Plaintiffs' request for costs in the amount of $2,724.57.

## CONCLUSION

Accordingly, this Court hereby DENIES the Defendants' Motion for a New Trial, DENIES the Defendants' Motion for a Judgment Notwithstanding the Verdict, and GRANTS the Plaintiffs' Motion for Attorney Fees. The Plaintiffs' request for $69,872.50 in fees and $2,724.57 in costs is GRANTED.

SO ORDERED.